**Selina K. KING and Pamela Hinote, Plaintiffs,**

v.

**AUTO, TRUCK, INDUSTRIAL PARTS AND SUPPLY INC., a Florida Corporation, and Mark Francis McDaniel, Defendants.**

**No. 3:96–cv–542/LAC.**

United States District Court,
N.D. Florida,
Pensacola Division.

March 28, 1998.

---

Matthew Bordelon, Gulf Breeze, FL, Stephanie Ann Taylor, Pensacola, FL, for Plaintiffs.

Kathryn Bargo, Catherine Hobart, Atlanta, GA, Douglas F. Miller, Pensacola, FL, for Defendants.

## *PARTIAL SUMMARY JUDGMENT*

COLLIER, District Judge.

Defendant Auto, Truck and Industrial Parts and Supply ("ATI")[1] is an auto parts store supplying automotive and truck parts and industrial supplies to local garages, service stations, car dealers, and the public in the Pensacola area (doc. 61, exh. B:¶ 3) . Wholly owned by Defendant Mark McDaniel, ATI offers what was once a unique system of parts delivery called "hot shot" service, whereby ATI would make immediate delivery of customer orders, regardless of the size of the order (*id.* at ¶¶ 1, 4; doc. 75:132). Generally, orders are taken by Counter Sales Persons ("CSPs") and then delivered to the customer via Delivery Drivers ("Drivers") (doc. 61, exh. B:¶ 5). In ensuring efficiency and promptness, this process usually results in a frantic and fast-paced cycle of constant

---

1. Defendants state that Plaintiffs incorrectly named "Auto, Truck, Industrial Parts and Supply, Inc." as a defendant in this matter, but that "Auto, Truck and Industrial Parts and Supply, Inc." filed an answer and has since appeared and participated in this lawsuit (doc. 3). Accordingly, the Court now refers to "Auto, Truck and Industrial Parts and Supply, Inc." when using the term "ATI."

pick-ups and deliveries between ATI and its customers (*id.*).

Pending before the Court is Defendants' motion for summary judgment and documents in support thereof (docs.60–63). Plaintiffs timely filed a memorandum and evidentiary materials in opposition (docs.71–82). Defendants also move to strike portions of affidavits submitted in response to their motion (docs.87–89). The Court has taken summary judgment under advisement, (doc. 69), and is now prepared to rule on all pending motions. For the reasons stated below, Defendants' motion for summary judgment is GRANTED in part and DENIED · in part.

## I. STATEMENT OF THE CASE

### A. Background

Mark McDaniel serves as president of ATI, while his wife, Lisa, is the secretary/treasurer (doc. 75:6). Other supervisory positions are held by George Burbank, manager, Robert Saxton, assistant manger, and Terrance Denny, bookkeeper (*id.* at 15–17).[2] The ATI employment hierarchy is then comprised of basically three lower-level positions, including CSPs, Drivers, and Outside Sales Representatives ("OSRs") (*id.* at 57, 111, 130). The Drivers are also "managed" by a Delivery Coordinator, a position which was temporarily abandoned between 1993 and 1995 (*id.* at 15, 39, 44–45).

Plaintiff Selena King was first employed at ATI between 1988 and 1989 (doc. 63, King Depo. [hereinafter exh. A] at 15).[3] She then returned to ATI in October of 1993 and resumed working as a Driver (*id.* at 16). While employed during this second period, King alleges that she was harassed by fellow employees and supervisors and witnessed harassment of other female Drivers (*id.* at 16–17). As a Driver, Plaintiff was responsible for delivering automotive parts to local mechanics' shops and car dealerships (doc. 61, exh. B:¶3). It was during these trips that Plaintiff claims she was additionally harassed by ATI customers (doc. 63, exh. A:90–98). Ultimately, Plaintiff King re-

signed on March 22, 1996 (doc. 1, exh. A:Complaint at ¶ 7) after an incident between Mark McDaniel and herself at which time he made disparaging remarks to her in front of other ATI employees (doc. 63, exh. A:79–80).

Plaintiff Pamela Hinote was also employed as a Driver at ATI beginning in March of 1995 (doc. 63, Hinote Depo. [hereinafter exh. B] at 36, 142). While at ATI, Plaintiff Hinote alleges that she was subject to hostile environment sexual harassment as well as discriminatory hiring and promotional practices (*id.* at 72, 151, 170–71). Like Plaintiff King, she also maintains that ATI customers harassed her while making deliveries to various locations in the Pensacola area (*id.* at 72, 75, 84). Because of an injury, Plaintiff Hinote stopped working on February 5, 1996 (*id.* at 36–37, 114–16). She then states in her complaint that she resigned on March 22, 1996, contemporaneously with Plaintiff King (doc. 1, exh. A:Complaint at ¶ 7).

### B. Procedural History

Plaintiffs King and Hinote filed charges of discrimination with the Florida Commission on Human Relations on April 11, 1996 and May 14, 1996, respectively (doc. 61, exh. 1). Plaintiffs then received their right to sue letters from the Equal Employment Opportunity Commission ("EEOC") (doc. 1, exh. A:Complaint at exhs. A and B) and filed this lawsuit in the Escambia County Circuit Court on October 31, 1996 (doc. 1, exh. A). Defendants subsequently removed the instant action to federal court pursuant to 28 U.S.C. §§ 1367 and 1441 (doc. 1).

In their two count complaint, Plaintiffs allege hostile environment sexual harassment (Count I) and discriminatory treatment in hiring and promotions (Count II) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Florida Civil Rights Act of 1992, FLA.STAT. ch. 760 ("FCRA") (doc. 1, exh. A).[4] Defendants now move for summary

---

2. David Lee was also an assistant manager but no longer holds that position (doc. 75:17).

3. Plaintiff King does not assert that any harassment occurred during this one year term of employment.

4. Because the Florida Civil Rights Act is patterned after Title VII, federal caselaw dealing with Title VII claims also applies to its Florida counterpart. *Kelly v. K.D. Const. of Florida, Inc.,* 866 F.Supp. 1406, 1411 (S.D.Fla.1994). *See also*

judgment on both procedural and substantive grounds (doc. 60). In support of their motion, Defendants have filed a memorandum of law, statement of facts, and evidentiary materials pursuant to N.D.Fla.Loc.R. 56.1 (docs.61–63). Plaintiffs have timely responded (docs.71–82) and the Court has taken the motion under advisement (doc. 69). Also pending is Defendants' motion to strike (doc. 87) which Plaintiffs oppose (doc. 89).

## II. Motion to Strike

Defendants move to strike portions of affidavits submitted by Plaintiffs in opposition to summary judgment (doc. 87). Specifically, Defendants argue that the testimony of Sherry Pahl, Jon Dumond, Joe Langley, and Richard Howard should be stricken on the grounds of irrelevancy, lack of personal knowledge, and inadmissibility under Fed. R.Evid. 404(b). Each of these contentions will be considered in turn below.

### A. Sherry Pahl

■ Defendants maintain that the affidavit testimony of Sherry Pahl should be stricken from the record as both inadmissible and irrelevant (doc. 87:2–4). They argue that because the "statements are devoid of any specific information ... there is no basis for determining whether the statements and actions observed by Ms. Pahl had any effect upon the Plaintiffs' work environment" (*id.* at 2). However, a statement's lack of specificity will not, without more, render it inadmissible. Rather, at the summary judgment stage the Court must decide the materiality of the evidence, and, should a plaintiff survive, the trier of fact then determines the weight and credibility to be afforded that evidence at trial.

■ Furthermore, the Court finds that Pahl did have personal knowledge of the facts to which she testified. In her affidavit she states that she was employed at ATI while Plaintiff King was working there (doc. 81:¶ 2). She had daily interactions with Mark McDaniel and other male employees and personally observed and complained

about harassing behavior (*id.* at ¶¶ 3–6).[5] Moreover, her statements regarding Mark McDaniel are not inadmissible pursuant to Fed.R.Evid. 404(b). The situations described by Pahl are not being used in order to show some new action in conformity therewith, but rather are to identify instances of allegedly harassing behavior observed at ATI.

■ Lastly, the Court is not compelled by Defendants' argument that Pahl's testimony is irrelevant (doc. 87:3). Pahl's statement that "Mark McDaniel and George Burbank would not even allow female drivers to be trained on books used by countermen" at least raises an issue of fact as to what training policies were in place at ATI and would tend "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401.

### B. Jon Dumond

■ Defendants also move to strike the testimony of Jon Dumond and argue that he is without personal knowledge to testify to matters contained within his affidavit (doc. 87:4). Defendants assert that because Dumond was not in a managerial position at ATI and because George Burbank did not have responsibility for hiring CSPs, Dumond's affidavit testimony must be stricken. However, Dumond stated that he had personal knowledge of ATI's policies as a result of conversations with *both* Mark McDaniel and George Burbank (doc. 79:¶¶ 6, 9). *Arguendo*, even accepting Defendants' contentions regarding Burbank's lack of hiring authority, such an argument does not preclude testimony based on conversations with McDaniel, who clearly had hiring authority, nor Burbank, who could still have known what those policies were. Additionally, Dumond's non-managerial status does not foreclose the possibility that he knew of ATI's policies from some other source of personal

*Brand v. Florida Power Corp.*, 633 So.2d 504, 507 (Fla. 1st DCA 1994).

5. Defendants do correctly assert, however, that Pahl had no personal knowledge as to Plaintiff

Hinote's situation at ATI. As such, Pahl's testimony as to the treatment of Hinote will be stricken (doc. 81:¶ 4), but will be admissible as it relates to other female Drivers employed while Pahl was at ATI.

knowledge, such as conversations with either Burbank or McDaniel. Furthermore, as discussed above, a statement which is arguably vague will not by itself render it inadmissible.

### C. Joe Langley

■ Defendants also move to strike the affidavit testimony of Joe Langley, supervisor at competitor auto parts supplier Auto-Zone (doc. 87:5). At paragraph 5 of his affidavit, Langley states "[t]he automotive parts and supplies catalogs and computer indexing system used by Selina K. King at AutoZone are organized and *to the best of my knowledge* are used in the same manner as other automotive parts retailers" (doc. 82:¶ 5) (emphasis added). However, Langley has not shown *any* basis for personal knowledge of the cataloging systems at any other parts store except AutoZone. As such, paragraph 5 of his affidavit must be stricken for lack of personal knowledge required under FED. R.EVID. 602.

■ In light of this finding, the Court finds it unnecessarily restrictive to strike his affidavit in its entirety for Plaintiffs' failure to disclose him under FED.R.CIV.P. 26(a)(1)(A). Although Plaintiffs concede that Langley was not disclosed as a witness having discoverable information, the Court finds that this failure was not prejudicial to Defendants. Effectively, Langley stepped into the shoes of Wendy Utz, a previous AutoZone supervisor who was disclosed during discovery. As Plaintiff King's supervisor, Utz had the same knowledge that Langley testified to in paragraphs 3 and 4 of his affidavit (doc. 82:¶¶ 3–4). Therefore, the affidavit testimony will not be stricken notwithstanding paragraph 5.

### D. Richard Howard

■ Finally, Defendants also move to strike the affidavit testimony of Richard Howard, a CSP at ATI while King was employed there (doc. 87:5). Howard's testimony indicates that as a CSP for over two years at ATI, he was aware of the requirements of the CSP position and personally heard comments by both Burbank and McDaniel regarding female promotions to the CSP position (doc. 80:¶¶ 2–5). Furthermore, he testified that vacancies existed at the position, and that through conversations with Plaintiff King and other Drivers, he believed that they were qualified to hold CSP jobs (*id .* at ¶ 6). Defendants are correct that Howard does not have personal knowledge as to whether King and other Drivers were the *most* qualified for the position, nor does he testify that ATI was seeking to fill those vacant positions (doc. 87:5). However, that assertion does not forestall the relevancy of Howard's statement that Plaintiff was qualified for the position. Indeed, a showing of Plaintiff's qualifications for the CSP position are essential in establishing a *prima facie* case of discriminatory promotional practices and is relevant. *See* discussion *infra* Part III(B)(iii). Demonstrating that the position was filled by a less or equally qualified individual outside of the protected class is a crucial step in the *prima facie* analysis. *See Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 642 (11th Cir.1998). Thus, because Howard's affidavit testimony is relevant, it will not be stricken.

### III. MOTION FOR SUMMARY JUDGMENT

### A. Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the party moving is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a ver-

dict for that party. *Id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir.1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

### B. Discussion

#### (i) Statute of Limitations

Defendants initially assert that Plaintiffs' claims are time-barred under the filing requirements of both Title VII and the FCRA (doc. 61:1–2). They argue that the Title VII limitations period prohibits Plaintiffs King and Hinote from litigating conduct occurring before June 15, 1995 and July 15, 1995 respectively (*id.*). Similarly, Defendants maintain that the statutory period under the FCRA disallows King's allegations occurring before April 11, 1995 and Hinote's before May 14, 1995 (*id.*).

▮▮▮▮ Indeed, the filing of a charge of discrimination with the EEOC within the time limits prescribed by 42 U.S.C. § 2000e–5(e)(1) is a prerequisite to the maintenance of a Title VII action. *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir.1980).[6] However, where a plaintiff can show that an employment practice constitutes a continuing violation, she will avoid the

harsh consequences of the limitations period. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992).

▮▮▮▮ "Although the precise contours and theoretical bases of [the theory of continuing violation] are at best unclear, there is general agreement that it relieves a plaintiff of the burden that all actionable conduct must have occurred within [the limitations period] prior to the charge, so long as the complaint is timely as to the last occurrence." *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1570 (11th Cir.1987) (citations and internal quotation marks omitted). In determining whether a defendant's conduct constitutes a continuing violation, the Eleventh Circuit distinguishes between the "'present consequence of a one-time violation,' which does not extend the limitations period, and the 'continuation of the violation into the present,' which does." *Beavers*, 975 F.2d at 796–97 (quoting *Webb v. Indiana Nat'l Bank*, 931 F.2d 434, 438 (7th Cir.1991)). *See also Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir.1993). The determination of whether a discriminatory act constitutes a continuing violation of Title VII or simply a past violation with present effect is a finding of fact. *Calloway*, 986 F.2d at 448.

▮▮▮ The Court finds that under a continuing violation theory, Plaintiffs are not time-barred from alleging conduct occurring prior to their respective limitations periods. Both Plaintiffs were employed at ATI within the applicable statutory periods, and both allege continuing hostile environment sexual harassment and disparate treatment occurring before and throughout those periods. Viewing the facts in a light most favorable to Plaintiffs, a genuine issue of material fact exists as to whether the discriminatory practices alleged by Plaintiffs during their 300 (Title VII) and 365 (FCRA) day windows were continuing violations of discriminatory conduct occurring prior to those dates.

#### (ii) Sexual Harassment

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer

---

**6.** In *Bonner v. City of Prichard* the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

"to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). In *McDonnell Douglas Corp. v. Green* the Supreme Court articulated a tripartite framework for analyzing claims brought under Title VII. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This framework placed the initial burden on a plaintiff to establish a *prima facie* case of discrimination. *Id.* at 802, 93 S.Ct. at 1824. Once the plaintiff presents a *prima facie* case, a presumption of discrimination arises. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The intermediate burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory explanation for the adverse action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the employer can demonstrate a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to raise a genuine factual question that the reason proffered by the defendant was merely pretextual. *Corbin v. Southland Int'l Trucks,* 25 F.3d 1545, 1550 (11th Cir.1994) (citing *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 920 (11th Cir.1993)).

The *McDonnell Douglas* framework is not exclusive to Title VII actions alleging race discrimination. Indeed, the analysis is applicable to sex discrimination cases as well. *Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 597 (11th Cir.1994); *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1018–19 (11th Cir. 1994). In *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66–67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), the Supreme Court held that an employee may show a Title VII violation by proving that the employee's employer engaged in discrimination based on sex, including sexual harassment, which created a hostile or abusive work environment. Indeed the language of Title VII does not restrict such claims to only "eco-nomic" or "tangible" discrimination. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993):

> The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.

*Id.* at 21, 114 S.Ct. at 370 (citations and internal quotation marks omitted).

In order to establish a *prima facie* case of hostile environment sexual harassment, a plaintiff must demonstrate that (1) she belongs to a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based upon her sex, (4) the harassment affected a "term, condition, or privilege" of employment, and (5) the employer is liable. *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987); *Henson v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982). In the instant case, Defendants argue that Plaintiffs are unable to establish the second, third, and fourth elements of their *prima facie* case (doc. 61:13). However, because Plaintiffs can show that a genuine issue of material fact exists as to each of these factors, they establish the requisite *prima facie* case of sexual harassment.[7]

Regulations promulgated by the EEOC are helpful in defining what kind of conduct constitutes sexual harassment and include "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . ." 29 C.F.R. § 1604.11(a) (1997). In determining whether conduct amounts to sexual harassment, the EEOC will look to "the record as a whole

---

7. Defendants do not argue, nor does the Court see a need to address in detail, the first and fifth elements of the *prima facie* case. As women, Plaintiffs are clearly members of a protected class. Furthermore, employer liability, the final element of the *prima facie* case, is not at issue here as Plaintiffs have shown that the offensive behavior at ATI was both perpetrated and well-known by various levels of higher ATI management, including Mark McDaniel, George Burbank, and Robert Saxton.

and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." 29 C.F.R. § 1604.11(b) (1997).

■ Although Defendants correctly assert that some of Plaintiffs' complaints do not amount to sexual harassment, there is ample evidence in the record which would permit a jury to find that the conduct complained of constitutes offensive behavior. *See Vinson,* 477 U.S. at 68, 106 S.Ct. at 2406 ("the question whether particular conduct was unwelcome presents difficult credibility determinations committed to the trier of fact"). Both Plaintiffs testified at deposition that they were offended by the behavior of employees and management at ATI and that they repeatedly asked that it be stopped (doc. 63, exhs. A:13–15, 17, 23–25, 38–40, 43–47, 50–51, 155–56; B:18, 29–30, 45–47, 192–98). Plaintiffs describe multiple incidents where males at ATI made disparaging, gender-based comments towards them and other female Drivers which were offensive. Moreover, there is absolutely no evidence in the record showing that either Plaintiff invited or otherwise incited the offensive conduct.

■ In satisfying the third element of the *prima facie* case, Plaintiffs have also shown that but for the fact of their sex, they would not have been the object of harassment. *See Henson,* 682 F.2d at 904. In meeting this prerequisite, Plaintiffs can establish causation in several ways. First, harassing behavior lacking a sexually explicit content but directed at women and motivated by animus against women satisfies the requirement. *Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1522 (M.D.Fla. 1991) (citing *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485 (3d Cir.1990) ("The offensive conduct is not necessarily required to include sexual overtones in every instance."); *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1014 (8th Cir.1988) ("Intimidation and hostility toward women because they are women can obviously result from conduct other than sexual advances.")). Second, sexual behavior directed at women will raise the inference that the harassment is based on their sex. *Robinson,* 760 F.Supp. at 1522 (citing *Huddleston v. Roger Dean Chevrolet Inc.,* 845 F.2d 900, 904–05 (11th Cir.1988); *Sparks,* 830 F.2d at 1561). Third, behavior

that is not directed at one particular individual or group but is nonetheless disproportionately more offensive or demeaning to one sex will qualify as actionable conduct. *Robinson,* 760 F.Supp. at 1522–23 (citing *Henson,* 682 F.2d at 904).

There are several examples of offensive behavior evident in the record which fit into the three categories described above. The repeated comments made to Drivers, although not always sexual in nature, clearly illustrated the workplace hostility felt only by the female employees at ATI (doc. 63, exhs. A:13–14; B:18, 46–47, 88). Furthermore, Plaintiffs have described sexual behavior directed toward them and other women at ATI which raises an inference of sex-based harassment, such as male employees throwing money at the women while they stood on tables to clean ceiling fans (*id.* at exh. A:155) and asking whether Plaintiff Hinote wished she looked like a topless model in a swimsuit calendar posted in the store (*id.* at exh. B:197–98). Plaintiffs also depict behavior which can be properly classified as the third type of conduct, that which "creates a barrier to the progress of women in the workplace because it conveys the message that they do not belong, that they are welcome in the workplace only if they will subvert their identities to the sexual stereotypes prevalent in that environment." *See Robinson,* 760 F.Supp. at 1522–23. In the case at bar, Plaintiffs were repeatedly subject to treatment which relegated them to the stereotypical role of subservient female. Plaintiffs were repeatedly asked to run errands for the CSPs including picking up lunch, beer, and cigarettes, dropping-off laundry, and paying their personal bills (doc. 63, exhs. A:71; B:190). Additionally, they were not permitted to use the break room, which was primarily for the male ATI employees (*id.* at exh. B:205–07).

■ Defendants' final challenge to the *prima facie* case is that Plaintiffs are unable to demonstrate that the sexual harassment complained of affected a "term, condition, or privilege" of employment (doc. 61:15). In evaluating whether the harassment affected their employment, a court must engage in a multi-factor inquiry and achieve a balance between making actionable any conduct that

is merely offensive and requiring the conduct to cause a tangible psychological injury. *Harris*, 510 U.S. at 21–22, 114 S.Ct. at 370. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* The Court further explained the importance of considering the totality of the circumstance when determining whether an environment is both objectively and subjectively hostile:

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive, but while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

In light of the Court's guidance in *Harris*, this Court now finds that genuine issues of material fact exist as to whether, when looking at all the circumstances surrounding Plaintiffs, the environment at ATI was objectively hostile or abusive. Here, the frequent instances of allegedly harassing behavior

raise at least a question of fact as to whether Plaintiffs were subject to unwelcome harassment on the basis of their sex. It is also significant to note that there were several isolated incidents where only female employees were subjected to harassing behavior, such as being asked to dust, sweep, mop, and clean the bathrooms (doc. 63, exhs. A:75; B:149–50). Although these incidents did not occur with the frequency of other harassing conduct, they are still helpful when proceeding under a totality of the circumstances analysis.

■■■ Furthermore, the Court concludes that Plaintiffs subjectively perceived their workplace as hostile and abusive, thus satisfying the two-pronged requirement that the environment be reasonably perceived, and *is* perceived, as hostile or abusive. *See Harris*, 510 U.S. at 22–23, 114 S.Ct. at 371 (citing *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405). Plaintiff King quit her job at ATI because of the abusive treatment she received there during her second term of employment; her resignation ultimately coming immediately after being cursed at and denigrated by Mark McDaniel in front of customers and other employees (doc. 63, exh. A:78–81). Moreover, Plaintiff Hinote stated that among other things she felt like nothing more than a "warm body" at ATI and feared Mark McDaniel to the point that she thought he might physically injure her (*id.* at exh. B:198–99, 204–05). These subjective feelings, coupled with the objective perceptions of hostility and abuse at ATI, suffice to allow a jury to find that the harassing behavior affected a term, condition, or privilege of employment.[8] Thus, summary judgment on that claim must be DENIED.

---

8. Under the *McDonnell* tripartite framework, Defendants would now have the burden to articulate a legitimate, non-discriminatory reason for their treatment of Plaintiffs. 411 U.S. at 802, 93 S.Ct. at 1824. Although a *McDonnell* analysis is not always appropriate in hostile environment sexual harassment cases, it is useful in hostile environment claims where the conduct at issue, though allegedly because of sex, is not *sexual* in nature. *See* 1 BARBARA LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW, 783 (3d ed.1996). In those instances, a proof issue may arise as to whether the hostile conduct occurred because of the plaintiff's sex, as opposed to an otherwise gender-neutral reason, such as a dislike for the plaintiff as an individual. *Id.*

In the case *sub judice*, neither Defendants nor Plaintiffs engage in a *McDonnell* type analysis and indeed Plaintiffs have produced evidence of behavior that *was* sexual, rendering any further inquiry into the latter stages of that test unnecessary. It is interesting to note, however, Defendants' statement that "the 'harassment,' which allegedly occurred Monday through Friday, was precipitated by the hectic nature of the business, not because of Plaintiffs' sex. Moreover, all employees, both males and females were equally subjected to the hectic pace and rough language" (doc. 61:14). Although this assertion could be construed as a legitimate, non-discriminatory reason for Defendants' behavior, the Court finds it unavailing. A hectic, greasy, and otherwise unsavory environment that condones foul lan-

### (iii) Disparate Treatment in Promotion

In carrying their burden of producing evidence sufficient to create a genuine issue of material fact on their disparate treatment claim, Plaintiffs can either produce direct evidence of discrimination motivating the employment decision or circumstantial evidence sufficient to allow the trier of fact to infer discrimination. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir.1998); *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir.1994). The Eleventh Circuit has defined direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption," *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir.) (quoting *Rollins v. TechSouth Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir.1987)), *reh'g denied*, 130 F.3d 446 (11th Cir.1997), and relates to actions or statements of an employer reflecting a discriminatory attitude correlating to the discrimination complained of by the employee. *Carter*, 132 F.3d at 641–42. *See also EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir.1990) (production manager's statements to black employee that "you people can't do a _____ thing right" constituted direct evidence); *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1072 (11th Cir.1990) (overwhelming amount of evidence of racial hostility, including barrage of racial slurs, was direct evidence); *Miles v. M.N.C. Corp.*, 750 F.2d 867, 876 (11th Cir.1985) (statement by plant manager that he wouldn't hire blacks because "half of them weren't worth a _____" was direct evidence).

In order to establish a *prima facie* case of discriminatory treatment with circumstantial evidence, a plaintiff must demonstrate facts sufficient for a reasonable jury to infer that discrimination has occurred. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1562 (11th Cir.1987). A plaintiff must demonstrate that (1) she is a member of a protected group, (2) she is qualified and applied for the promotion, (3) she was rejected in spite of her qualifications, and (4) the individual who received the promotion is not a member of a protected group and had lesser or equal qualifications. *Carter*, 132 F.3d at 642.

▮ In the case at bar, Plaintiffs are able to demonstrate direct evidence of discrimination. Richard Howard testified in his affidavit that Mark McDaniel stated that the CSPs should "put a stop" to and discourage the female drivers' inquiries about filling counter vacancies because there would be no women hired on the counter (doc. 80:¶ 5). Furthermore, Howard testified that George Burbank, manager of ATI, stated that "hell would freeze over before Mark puts a woman on the counter" (*id.* at ¶ 4). Deposition testimony from both Plaintiffs also indicates that Mark McDaniel told Burbank that he would never place a female driver at the front counter (doc. 63, exhs. A:115; B:122).[9] Additionally, Jon Dumond, a sales representative at ATI, testified that Mark McDaniel informed him that it was an unwritten policy at ATI that no female employees would be hired, promoted, or employed as countermen (doc. 79:¶ 6).

Defendants argue that Burbank was "only speculating" as to whether McDaniel would or would not place a female at the counter position (doc. 61:3). They state in their memorandum that Plaintiff King "alleges that she asked her Store Manager, George Burbank, why females were not given Coun-

---

guage and boorish behavior still does not justify harassment of an individual based on her sex. There is not a scintilla of evidence in the record that male employees were called "stupid bitches," ordered to run personal errands, or treated like exotic dancers, even on the busiest of days.

9. These statements would seem to raise a "double hearsay problem." Under the federal rules, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." FED.R.EVID. 805. *See Zaben v. Air Products &* *Chemicals, Inc.*, 129 F.3d 1453, 1456–57 (11th Cir.1997). The statements made by Mark McDaniel, president of ATI, to Burbank are statements of a party opponent and technically not hearsay under FED.R.EVID. 801(d)(2)(A). Furthermore, George Burbank, manager of ATI, made his statements to Plaintiffs in his capacity as store manager. A statement of an agent or servant concerning a matter within the scope of his employment and made during the existence of the relationship, is an admission of his employer. FED.R.EVID. 801(1)(2)(D). *See Zaben*, 129 F.3d at 1456–57.

ter Sales Person jobs and he allegedly responded that while he never specifically asked Mark McDaniel about putting a female assistant on the sales counter, he felt that Mark McDaniel would not put a female in a CSP position. (King Deposition p. 115.)" (doc. 61:3). However, this misstatement of Plaintiff's testimony improperly characterizes Burbank's response as speculative. Indeed, Plaintiff King's deposition transcript clearly indicates that it was King who never asked McDaniel directly, not Burbank:

Q: Did you ever inquire about an open counter position at ATI?

A: I've asked George [Burbank] several times when there were positions there about, "How come Mark won't put one of us up there? Why don't he put me up there?" And he'd laugh and tell us, no, that he would not put a female up there. He will not have it.

Q: Did you ever ask Mark if he would put a female up there?

A: I didn't, personally.

Q: Did you ever ask Lisa [McDaniel]?

A: No, I didn't, not that I can remember.

(doc. 63, exh. A:115). Nowhere in the cited portions of the transcript does Plaintiff King testify that Burbank had not specifically asked McDaniel whether he would have females work as CSPs. Burbank was not speculating as to what he believed McDaniel would do. Rather, he responded to King's question by stating that McDaniel simply would not hire a female for the CSP position.[10]

Because Plaintiffs have produced direct evidence sufficient to support a showing disparate treatment in promotion, it is unnecessary to proceed under the second and third prongs of *McDonnell Douglas*. In *Lee v. Russell County Board of Education* the Eleventh Circuit explained the reasoning behind such a finding:

[W]here a case for discrimination is proved by direct evidence it is incorrect to rely on

a *McDonnell Douglas* form of rebuttal. Under the *McDonnell Douglas* test plaintiff establishes a prima facie case when the trier of fact *believes* the four circumstances outlined [in *McDonnell Douglas*] which give rise to an inference of discrimination. Where the evidence for a prima facie case consists ... of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the prima facie evidence the ultimate issue of discrimination is proved; no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, nondiscriminatory reasons.

684 F.2d 769, 774 (11th Cir.1982) (citations omitted).

Moreover, "[t]o allow rebuttal of a proved case of discrimination simply by articulation of a plausible nondiscriminatory reason would be to 'stick [plaintiff] on the four prongs of *McDonnell* Douglas when he has already shown intentional discrimination by direct evidence.' " *Lee,* 684 F.2d at 774 (citing *Ramirez v. Sloss,* 615 F.2d 163, 169 n. 10 (5th Cir.1980)). A genuine issue of material fact exists as to whether Plaintiffs suffered disparate treatment in promotion at ATI. As such, summary judgment on the claim of disparate treatment is DENIED and resolution of that issue must be properly left for the trier of fact.

### (iv) Individual Liability

 Defendants also move to dismiss Mark McDaniel as a party defendant to this action (doc. 61:24). Defendants correctly argue that employees and agents may not be sued in their individual capacities under Title VII. *See Cross v. Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). As a matter of law, individuals cannot be held liable under Title VII. *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996); *Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir.1995). Similarly, the federal courts have rejected

---

**10.** Moreover, direct evidence is evidence "which *if believed,* proves existence of fact in issue without inference or presumption," *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir.) (emphasis added), *reh'g denied,* 130 F.3d 446 (11th Cir.1997) (table decision), and of course, on summary judgment all facts must be construed in a

light most favorable to the non-moving party. Here, Burbank's statement, taken as true for the purposes of summary judgment, would demonstrate the discriminatory attitude at ATI which directly related to the disparate hiring and promotional practices complained of by Plaintiffs.

individual capacity suits brought pursuant to the FCRA. *See, e.g., Sanders v. Mayor's Jewelers, Inc.*, 942 F.Supp. 571, 573–74 (S.D.Fla.1996) (declining to construe identical statutory provisions under Title VII and the FCRA as to produce meanings that differ "widely enough to submit a whole new class of defendant to suit in discrimination actions brought under the FCRA"). In *Busby*, the Eleventh Circuit held:

> Individual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.

931 F.2d at 772 (citations omitted), *quoted in, Cross*, 49 F.3d at 1504.

■ Plaintiffs rebut Defendants' assertion by claiming that an issue of fact exists as to whether Mark McDaniel is an "employer" (doc. 71:25). However, the Court finds this argument unpersuasive. Although McDaniel was the president and sole shareholder of ATI, other cases in this circuit have held that defendants holding similar positions as McDaniel who are sued in their individual capacities must be dismissed. *See, e.g. Brewer v. Petroleum Suppliers, Inc.*, 946 F.Supp. 926, 930–31 (N.D.Ala.1996) (dismissing chief executive officer of defendant corporation from Title VII suit where he was named in individual capacity); *Bahadirli v. Domino's Pizza*, 873 F.Supp. 1528, 1533–34 (M.D.Ala.1995) (holding that corporate president who owned 75% share of business cannot be sued in his individual capacity). Therefore, Defendants' motion for summary judgment as to the individual liability of Defendant MARK McDANIEL is GRANTED.

## IV. SUMMARY

The Court's ruling in this matter may be summarized as follows, and IT IS HEREBY ORDERED:

1. Defendants' motion to strike (doc. 87) is **GRANTED** as to paragraph 5 of the affidavit testimony of Joe Langley (doc. 82:¶ 5) and the reference to Plaintiff Hinote in paragraph 4 of Sherry Pahl's affidavit (doc. 81:¶ 4). In all other respects, Defendants' motion to strike is **DENIED**.

2. Defendants' motion for summary judgment (doc. 60) as to the claims of hostile environment sexual harassment and disparate treatment in hiring and promotion is **DENIED**.

3. Defendants' motion for summary judgment (doc. 60) as to Defendant MARK McDANIEL's individual liability is **GRANTED**. Counts I and II are **DISMISSED** as to Defendant MARK McDANIEL.