**Bruce WHEATLEY, Plaintiff,**

v.

**BAPTIST HOSPITAL OF MIAMI, INC., Defendant.**

**No. 96–3610–CIV.**

United States District Court, S.D. Florida.

April 17, 1998.

Garland Hogan, Lazy Lake, FL, for Plaintiff.

Robert Kaufman, Miami, FL, for Defendant.

## ORDER GRANTING SUMMARY FINAL JUDGMENT FOR DEFENDANT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendant's Motion for Summary Judgment, filed March 12, 1998. Plaintiff filed a response on March 26, 1998. Also pending before the Court are two other sets of motions: (1) Defendant's Motion for Oral Argument, filed March 12, 1998; and Plaintiff's Request for Oral Argument, filed March 26, 1998; and (2) Defendant's Motion for Leave To File Exhibits 11, 12, and 13 of Defendant's Motion for Summary Judgment Under Seal, filed March 12, 1998; and Plaintiff's Opposition to Defendant's Motion To Seal Exhibits and Motion To Strike Defendant's Exhibits 11, 12, and 13, filed March 26, 1998.

## I. Factual Background

Defendant, Baptist Hospital of Miami, Inc., determined in early 1994 that it needed to hire a licensed practical nurse ("LPN") for a unit that Defendant characterizes as a "Medical/Surgical ("Med–Surg") unit with some Gynecology" in the hospital's Three Lake Pavilion. (Def.'s Statement Undisputed Material Facts ¶ 1 [hereinafter "Def.'s Statement"]; *see also* Pl.'s Statement Disputed Material Facts ¶ 1 [hereinafter "Pl.'s Statement"] (stating that "Three Lakes Pavilion was the designated GYN/Med–Surg floor for Baptist Hospital").) Consequently, Sandy Neijna ("Neijna"), Nurse Manager of the Three Lake Pavilion, submitted a Personnel Requisition Form, which was posted on February 2, 1994, reflecting the unit's need for an LPN. Under a section of the form entitled "Experience: Please Indicate Clearly What Is Absolutely Required as a Prerequisite," Neijna wrote "Med/Surg experience" as a requirement of the LPN position she was seeking to fill. (Def.'s Mot. Summ. J., Ex. 6.) Defendant then placed an advertisement, which appeared in the *Miami Herald* on February 20, 1998, listing several different openings for nurses at the hospital. For the position Neijna needed to fill, the ad specified that the hospital was seeking an "Acute Care/GYN LPN" who "[m]ust have acute care hospital experience within the past 2 years." (*Id.*, Ex. 7.)

Plaintiff responded to the advertisement on February 21, 1998 by calling Susan Tait ("Tait"), Defendant's Nurse Recruiter. Plaintiff asserts that Tait told him that the job did not exist. Defendant, however, maintains that Tait only told Plaintiff that the position was in Med–Surg with service to only some Gyn patients, in response to Plaintiff's emphasis on his OB/Gyn experience. Plaintiff alleges that subsequent to this discussion, he asked a female friend of his, Laura Black ("Black") to call Tait immediately about the same position. Plaintiff claims that although Black is not an LPN, Tait set up an interview with her. Defendant responds that Tait did in fact set up an interview with Black but declined to set up a second interview upon determining that she did not have the requisite qualifications.

Plaintiff does not dispute that Black was offered neither a second interview nor the LPN position. It is also undisputed that shortly thereafter Plaintiff contacted the hospital again, complaining that Tait had discriminated against him regarding his inquiry about the LPN position. Maribeth Rouseff ("Rouseff"), Defendant's Corporate Director of Recruitment, investigated the matter and later spoke with Plaintiff by phone.

On February 23, 1998, Plaintiff went to the hospital, filled out an employment application, and interviewed with Rouseff. On his employment application, Plaintiff wrote that the position he desired was "LPN–OB/GYN." (Pl.'s Opp'n to Def.'s Mot. Summ. J. [hereinafter "Pl.'s Opp'n"], Ex. 7.[1]) Under "Other Credentials or specialized training" Plaintiff wrote "OB/GYN" and "Hi Risk OB." (*Id.*) Under the section for employment history, Plaintiff listed that he had worked at Health Force–Miami, describing the work there as "OB–Gyn Staff Relief at Jackson;" Broward General Hospital, describing the work there as "OB–Gyn Staff Nurse Duties;" that he was self-employed for a period of time; and that he worked in the army as a "cross-trained medic/midwife" doing "general patient care support." (*Id.*) During the interview, Plaintiff asked Rouseff whether she was a John Lennon fan. He then said that a statement that John Lennon had made—that "women are the niggers of the world"—had really hit home with him. (Pl.'s Dep. at 139.) Plaintiff further stated that he considered it to be part of his job to educate women about

their bodies. (*Id.*) Rouseff asserts that after the interview she requested that Plaintiff verify his time in the U.S. Army and the time during which he was self-employed. While Defendant claims that Plaintiff never provided Rouseff with this information, Defendant states in an affidavit that he did in fact provide the hospital with the requested information.

On February 28, 1998, Plaintiff interviewed a second time with Neijna and another hospital employee. As a result of that interview, Neijna noted on Plaintiff's application that he had approximately two years of experience working with OB–Gyn patients, that he had minimal Med–Surg experience, and that his plans for the future included working in Third World countries. Plaintiff does not dispute that this was an accurate account of what was discussed during the interview. (*See id.* at 146). Neijna recommended that the hospital conduct reference checks, and thereafter Tait did so. Defendant claims that the reference checks were extremely negative toward Plaintiff.[2] Plaintiff maintains that he was qualified for the LPN position and that the negative references to which Defendant refers were "coaxed and wheedled out of anonymous informants." (Pl.'s Opp'n at 4.)

Defendant claims that it decided not to employ Plaintiff in part because Plaintiff did not have adequate experience, had made inappropriate comments during the interview

---

1. Plaintiff alleges that the copy of his employment application that Defendant supplied to the Equal Employment Opportunity Commission ("EEOC") differs in several respects from the copy of his employment application that Defendant has attached to its motion for summary judgment. For example, Plaintiff claims that the copy provided to the EEOC contains several circular marks around some of the entries on the application, most notably a circle around the entry "Active EEOC Complaint; Gender Bias Discrimination," which Plaintiff wrote in connection with his employment history at Broward General Hospital. These circular marks do not appear in Defendant's exhibit. Defendant claims that none of its seven employees who reviewed Plaintiff's application made any circular notations. (Def.'s Mot. Summ. J. at 4 n. 5.) Because at the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, the Court will consider only that

copy of Plaintiff's employment application that he alleges was filed with the EEOC and any portions of Defendant's exhibit that Plaintiff does not dispute.

2. Defendant has moved to file exhibits 11, 12, and 13 to its summary judgment motion under seal. These exhibits contain the notes taken by Tait when she contacted Plaintiff's past employers for reference checks. Defendant seeks to file these documents under seal because the individuals who spoke about Plaintiff allegedly did so only on the condition of anonymity. Plaintiff has moved to strike these documents. The Court finds that it need not consider these highly prejudicial documents specifying prior bad acts by Plaintiff in order to determine, as discussed below, that Defendant is entitled to summary judgment. The Court will accordingly strike Defendant's Exhibits 11, 12, and 13.

process, had failed to provide verification for portions of his employment history, and had received negative references. Defendant finally hired a female applicant, Ann Garcia, who had received positive references and who the hospital believed to have the necessary experience. Plaintiff argues that (1) Defendant unlawfully discriminated against him by failing to hire him on account of his gender, and (2) Defendant unlawfully retaliated against him after learning that Plaintiff had filed a discrimination claim against one of his former employers.

## II. Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the evidence in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exits. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then the Court should refuse to grant summary judgment. See id. at 919. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. See Anderson, 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. See id. at 249–50, 106 S.Ct. 2505.

## III. Analysis

As a preliminary matter, the Court finds that the parties have fully briefed the relevant facts and legal issues and that the parties' submissions are sufficient for the

Court's determination regarding summary judgment. Thus, the parties' motions for oral argument will be denied. See S.D.Fla. Local R. 7.1(b)(1) (Court may grant or deny hearing "in its discretion").

### A. Count I: Discriminatory Failure To Hire

Title VII of the Civil Rights Act of 1964 ("Title VII") forbids employers from discriminating against individuals on account of sex. 42 U.S.C. § 2000e–2(a)(1) (1994). A Title VII plaintiff can prove a case of discrimination either through direct evidence, statistical evidence, or circumstantially by employing the McDonnell Douglas/Burdine burden-shifting scheme established by the Supreme Court. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff first argues that he need not prove his case through the McDonnell Douglas/Burdine framework because he has provided direct evidence of discrimination. The Court finds this argument to be without merit. The direct evidence Plaintiff claims to have consists of the following: (1) evidence that Defendant seeks to establish, and has earned awards for maintaining, a "women-friendly environment," (Pl.'s Opp'n at 4–5);[3] and (2) Plaintiff has submitted letters and faxes indicating that Fred Messing ("Messing"), then Chief Operating Officer for Defendant, had requested that the Florida Hospital Association send him a legal opinion regarding restricting the hiring of male LPNs to provide obstetric services (Pl.'s Opp'n, Ex.15).

As explained by Justice O'Connor, "stray remarks in the workplace ... cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard." Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., con-

---

**3.** Although Defendant does not appear to dispute this assertion, the Court can find no reference in

Plaintiff's summary judgment papers to this alleged evidence.

curring) (citations omitted). The Eleventh Circuit has adopted this definition of direct evidence and explained, "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Trotter v. Board of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453–54 (11th Cir. 1996). Plaintiff does not possess direct evidence under this standard. The allegation that Defendant seeks to establish a "women-friendly environment," even if proven, would bear no direct relation to Plaintiff's employment application. Neither does the existence of such a policy necessarily imply that Defendant discriminates against male applicants for nursing positions. If, as Plaintiff contends in his case in chief, male nurses are as suited to serve female patients as female nurses, fostering a women-friendly environment would not preclude the hiring of male nurses. Thus, the fact that a hospital seeks to implement a women-friendly environment is not indicative of discrimination against males. To hold otherwise would contradict the very basis of Plaintiff's claim—that both male and female nurses can provide excellent patient care.

■ The correspondence regarding Messing's legal inquiry also fails as direct evidence because Plaintiff has not shown that Messing was at all involved in the decision not to hire him. Therefore, the Court cannot simply assume a relation between Messing's activities and the independent decision not to hire Plaintiff. Moreover, Plaintiff is again making an unwarranted inferential leap. Merely because hospital officials seek an advisory opinion as to the legal ramifications of certain activities does not mean that they are scheming to engage in those activities. It is possible that Defendant simply wanted to know what the legal consequences of potential hiring decisions were so as to ensure that it did not run afoul of anti-discrimination laws.

■ Having failed to produce direct evidence of discrimination, Plaintiff must prove his case under the *McDonnell Douglas/Burdine* framework. Under this burden-shifting scheme, a plaintiff presenting circumstantial evidence of discriminatory failure to hire must establish a prima facie case by showing that (1) he is a member of a protected group; (2) he applied and was qualified for the position he was seeking; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by someone outside the protected class. *See Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir.1995). If a plaintiff makes out his prima facie case, the employer must then come forward with legitimate, non-discriminatory reasons for its employment decision. *See id.* If the employer does so, the burden then shifts to the plaintiff to defeat summary judgment by raising "a genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir.1997). To survive a motion for summary judgment, the plaintiff must demonstrate " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.' " *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 685, 139 L.Ed.2d 632, 1998 WL 6337 (1998) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996) (internal citations and quotation marks omitted)).

■ The Court finds that Plaintiff has not established a prima facie case because he has not demonstrated that he was qualified for the LPN position Defendant was seeking to fill. The undisputed evidence indicates that Med–Surg experience was a mandatory requirement for the position. Both the initial personnel requisition form completed by Neijna and the subsequent *Miami Herald* ad clearly indicated that this type of experience was a must. Plaintiff's employment application, however, reveals that he was interested in an OB/Gyn position, that his specialized training was in OB/Gyn and high risk OB, and that his past employment included only OB/Gyn staff work and general patient care. Plaintiff does not dispute that Neijna concluded that Plaintiff had minimal Med–Surg experience partly as a result of Plaintiff's

employment history. (*See* Pl.'s Statement ¶ 26.) Moreover, despite Neijna's somewhat favorable characterization of Plaintiff's experience, Plaintiff conceded at deposition that he had no Med–Surg experience whatsoever. (Pl.'s Dep. at 132.) The undisputed fact that Plaintiff had either minimal relevant experience or none at all prevents Plaintiff from establishing that he was qualified for the position offered.

■ Even assuming, however, that Plaintiff has established a prima facie case of discrimination, he has failed to offer competent evidence demonstrating that Defendant's proffered reasons for not hiring him were pretextual. Defendant maintains that its legitimate reasons for not employing Plaintiff included his lack of experience, the extremely negative references from Plaintiff's past employers, and by Plaintiff's inappropriate behavior during the interview process.[4]

As noted above, it is undisputed that Plaintiff had little or none of the Med–Surg experience required by the hospital. Moreover, Plaintiff does not dispute that he made the comments regarding the John Lennon quote and that he stated his belief that it was part of his job to educate women about their bodies.[5] Although conceding that these facts are true, Plaintiff argues that Defendant should not have made any negative inferences therefrom. It was more than reasonable, however, for Defendant to have taken these comments into account, and to have concluded that they revealed an attitude that was potentially damaging to the patients that would be under Plaintiff's care.

■ Finally, Plaintiff has provided no evidence, other than unsupported assertions that Defendant coerced unwilling informants, to refute Defendant's statement that it received extremely negative references from Plaintiff's past employers. Although Plaintiff "disputes vigorously the statements about his alleged 'poor references,'" (Pl.'s Statement ¶ 24), he nowhere offers evidence of the falsity of these references or any evidence indicating that he had good references.[6] Plaintiff's mere assertions that these references are not worthy of belief are insufficient to create a genuine dispute as to the existence of these references and Defendant's reliance thereon, given that a plaintiff's subjective determination that he is qualified is not sufficient to create an issue of fact when his superiors determine otherwise. *See Hamalainen v. Mister Grocer Corp.*, 735 F.Supp. 1025, 1029 (S.D.Fla.1990). Although Plaintiff has submitted the affidavit of Roberta Cirocco, an Advanced Registered Nurse Practitioner, stating that Plaintiff was fully qualified for the LPN position, that opinion also does not create an issue of fact as to Plaintiff's qualifications. "It is the perception of the decision maker which is relevant." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir.1998) (citation omitted).

Plaintiff's lack of the kind of experience Defendant required, his negative employment references, and his behavior during the interview process all are legitimate reasons for Defendant's decision not to hire him. Plaintiff has not cast sufficient doubt on any of these reasons sufficient to create a genuine issue of pretext.

**4.** Defendant also claims that it was motivated by gaps in Plaintiff's employment record. However, because Plaintiff asserts that he did provide this information, the Court will assume that he did so.

**5.** Plaintiff continued to make what the hospital regarded as inappropriate comments in a series of letters he sent to Defendant protesting its decision not to hire him. For example, Plaintiff wrote, "We males have a natural advantage when caring for female patients.... Women look to men for support, comfort and protection"; and "The patients trust us [males] and the MDs soon learn to depend on us. We more often than not have a greater level of cooperation and compliance from patients, their families and the

MDs. This can be hard for a female nurse to see and accept. But, it is a natural advantage for male nurses, it's human nature." (Def.'s Mot. Summ. J., Ex. 18.) Plaintiff appears to argue that males are inherently more qualified than females to be nurses, which is the very kind of stereotyping that Title VII was enacted to combat.

**6.** In fact, Defendant's assertion that it received negative references is further supported by records later obtained from Plaintiff's past employers. They contain documented instances of inappropriate and offensive behavior, insubordination, and failure to comply with hospital policy. (*See* Def.'s Mot. Summ. J., Ex. 19.)

## B. Count II: Retaliation

Plaintiff also alleges that Defendant unlawfully retaliated against him because he revealed on his employment application that he had filed an EEOC complaint for gender discrimination against one of his former employers. A prima facie case of retaliation under Title VII must include a showing "(1) that there was a statutorily protected participation; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action." *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir. 1990). Once a plaintiff sets forth a prima facie case of retaliation, and the Defendant has offered non-discriminatory reasons for its employment decision, the Plaintiff has the burden of coming forward with evidence of pretext. *See Raney*, 120 F.3d at 1196; *Combs*, 106 F.3d at 1538.

Even assuming that Plaintiff has established a prima facie case of retaliation, Plaintiff has not offered evidence sufficient to raise an issue of fact as to whether Defendant's proffered reason for not hiring him was pretextual. Defendant states that it did not hire Plaintiff because it believed he was not qualified. As discussed above, Plaintiff has not produced competent evidence to dispute his lack of qualifications, including his lack of prior experience and negative references. Therefore, summary judgment will also be entered for Defendant on Plaintiff's claim of retaliation.

## IV. Conclusion

Regarding Plaintiff's claim under Title VII for discriminatory failure to hire, the Court concludes that (1) Plaintiff has not produced direct evidence of discrimination; (2) Plaintiff has not established a prima facie case of discrimination under the *McDonnell Douglas/Burdine* framework because he has not demonstrated that he was qualified for the LPN position; and (3) even assuming that Plaintiff has established a prima facie case, he has not provided evidence of pretext sufficient to raise a genuine issue of material fact. Therefore, Defendant is entitled to summary judgment. Defendant is also entitled to summary judgment on Plaintiff's claim for retaliation because, again, Plaintiff has failed to provide competent evidence of pretext.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Oral Argument and Plaintiff's Request for Oral Argument be, and the same are hereby, DENIED. It is further

ORDERED and ADJUDGED that Defendant's Motion for Leave To File Exhibits 11, 12, and 13 Under Seal be, and the same is hereby, DENIED. It is further

ORDERED and ADJUDGED that Plaintiff's Motion To Strike Defendant's Exhibits 11, 12, and 13 be, and the same is hereby, GRANTED. It is further

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, GRANTED. Final summary judgment is hereby ENTERED for Defendant. All other pending motions are hereby DENIED as MOOT.