Sheldon VICKERS, Plaintiff,

v.

FEDERAL EXPRESS
CORPORATION,
Defendant.

No. 98–2112–CIV.

United States District Court,
S.D. Florida.

Oct. 26, 2000.

---

Leslie Holland, Coral Gables, FL, for plaintiff.

David Hanan Spalter, Fort Lauderdale, FL, Harry N. Turk, Epstein, Becker & Green, Miami, FL, for defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

HOEVELER, Senior District Judge.

THIS CAUSE comes before the Court on Defendant's Motion for Summary Judgment, filed April 28, 2000, and Plaintiff's Motion for Summary Judgment, filed May 22, 2000. The Court heard oral arguments on these motions on October 18, 2000. Having been advised in the premises, it is **ORDERED AND ADJUDGED** as follows:

(I) Defendant's Motion for Summary Judgment is **GRANTED.**

(II) Plaintiff's Motion for Summary Judgment is **DENIED.**

### BACKGROUND

Plaintiff worked as a courier for Federal Express from February 17, 1993, until his discharge on November 21, 1997. During the nearly five years Plaintiff worked for Defendant, approximately two of those years (July 1995 to August 1997) Plaintiff worked a bulk route under the supervision of Walkyria "Val" DeMello, a white female. During that time Plaintiff was counseled by DeMello on many occasions. For example, on January 23, 1996, Plaintiff was counseled for road efficiency, communications with dispatch, missed pickups, and time card accuracy. *See Defendant's Exhibit C.*[1] On February 19, 1996, DeMello drafted a memo (which Plaintiff did not sign) citing Plaintiff for insubordination for ignoring her attempts to communicate then finally responding "I am off the clock." *See Defendant's Exhibit D.* On December 2, 1996, Plaintiff was counseled for using ten sick days in the preceding twelve months, all of which fell in conjunction with a weekend, vacation, or holiday. *See Defendant's Exhibit H.*

Plaintiff appealed the December citation under the Defendant's "guaranteed fair treatment program." As a result of the appeal, three of the absences were excused under Defendant's family and medical leave policy, reducing the total number of absences to just barely within acceptable limits, though the counseling was still upheld due to the suspicious proximity of the absences to holidays and weekends. *See Defendant's Exhibits J & K.* By February 1997, Plaintiff's attendance record once again fell below acceptable levels as a result of four additional absences. *See Defendant's Exhibit J.* Plaintiff was issued an additional counseling memorandum relating to attendance on February 17, 1997. *See id.* This time, however, Plaintiff did not challenge the memo, in fact, he even signed an action plan acknowledging the problem and agreeing to take steps to improve. *See id.* Aside from the attendance policy and insubordination, DeMello also counseled Plaintiff on two occasions for failing job knowledge tests on August 20, 1996, and February 11, 1997.[2] *See Defendant's Exhibits F & G.*

In August of 1997, shortly after DeMello transferred to a different office, Plaintiff volunteered for a morning route (Rt.198) where he worked for approximately three months under the supervision of Kathi Morgan, another white female. *See Defendant's Exhibits A & K.* Both parties to this suit concede that the morning route was more difficult than the bulk route because

---

**1.** On April 22, 1996, Plaintiff signed a written "performance reminder," revising the January 23, 1996, performance reminder and describing incidents that took place on December 6, 1995 (not maintaining proper communication with dispatch) and April 4, 1995 (leaving packages behind at a pick-up stop). *See Defendant's Exhibit D.*

**2.** February 1997 coincides with the time Plaintiff alleged in his complaint that the disparate treatment began. *See Plaintiff's Complaint ¶ 11.*

the bulk route consisted of relatively few stops with a high volume of packages at each stop, whereas the morning route entailed a much higher number of stops,[3] as well as greater familiarity with delivery codes and street addresses.

Plaintiff underwent a brief training period with the courier formerly responsible for the morning route, Francesco "Frank" Montelli. Shortly thereafter Plaintiff was again counseled—this time by his new supervisor, Kathi Morgan. For example, on September 9, 1997, the first time Plaintiff worked the route alone, Morgan verbally counseled Plaintiff for several improper entries which created the false impression of additional stops. *See Defendant's Exhibit A* (Vickers Depo.) at 72. Plaintiff also signed a "tracker printout" acknowledging that he was aware of the correct coding methods. *See Defendant's Exhibit O.* Plaintiff's excuse was that he did not know that the entries were improper, since he had seen Montelli make the same type of entries. Morgan then counseled Montelli, who admitted using the same procedures. *See Defendant's Exhibit N* (Montelli Depo.) at 28. After Morgan spoke with Montelli, Montelli also told Plaintiff that they must avoid such making these types of entries. *See Id.* at 35–36.

Ten days later, on September 19, 1997, Morgan noticed that Plaintiff had coded a package as delivered at 10:29 a.m.[4] when Morgan herself had visited Plaintiff and knew that the package was not delivered as of 10:40 a.m. *See Defendant's Exhibit P.* Plaintiff was confronted with this discrepancy and suspended pending the outcome of an investigation by Morgan and Senior Manager Tex Ziadie. *Id.*

The resulting investigation of Plaintiff's September 19, delivery record revealed a series of coding errors and misrepresentations. For example, Plaintiff entered two signatures for one stop ("William Treejo" and "T. William") thereby creating two stops which would make Plaintiff's stops-per-hour look better. *Id.* Plaintiff even admitted that he changed the name on the second package so that his supervisors would not suspect that he recorded a single stop as two stops. *See Defendant's Exhibit A* (Vickers Depo.) at 77–78. Another entry showed the delivery of two packages at the same time (10:27 a.m.) even though the stops were across the street from one another and both on the second floor of their respective buildings. *See Defendant's Exhibit P.* And yet another entry showed that Plaintiff had indicated delivery to the person whose name was on the package, rather than the person who actually signed for it. *Id.* The investigation also revealed (and Plaintiff admitted) that Plaintiff even entered a customer's name in the customer record after neglecting to obtain the customer's signature. *See Defendant's Exhibit A* (Vickers Depo.) at 99. After the investigation, Plaintiff was counseled in writing on September 24, 1997, and allowed to return to work. *See Defendant's Exhibit P.*

Not withstanding the verbal warning on September 9, and the written warning on September 24, a subsequent audit conducted on November 13, 1997, revealed that Plaintiff had once again falsified his delivery record. *See Defendant's Exhibit M.* Plaintiff recorded eighty (80) stops for the day, whereas the "stop count" sheet indicated that Plaintiff had only made fifty-six (56) stops. *Id.* The discrepancy apparently caused, to a large extent, by the same coding errors Plaintiff was advised not to use on September 9. On November 14, 1997, Plaintiff was once again suspended pending another investigation. *Id.* The results of that investigation ultimately led to the Plaintiff's termination on November

---

3. Plaintiff's deposition indicates that the bulk route had no more than ten stops, whereas the morning route had between forty and eighty stops per shift. *Defendant's Exhibit A,* at 64.

4. This time is especially suspicious, because the package would have been deemed late if it were delivered after 10:30 a.m. *See Defendant's Exhibit A,* (Vickers Depo.) at p. 76.

21, 1997. *See Defendant's Exhibit U.* Plaintiff then requested an internal review of his discharge pursuant to both Defendant's "guaranteed fair treatment policy" and Equal Employment Opportunity procedures. *See Defendant's Exhibit V.* This was the first time that Plaintiff claimed to have been subjected to racial discrimination (as opposed to unfair treatment in general). *Id.*

Plaintiff, a black male, alleges that he was terminated because of his race in violation of Title VII (42 U.S.C. § 2000e et. seq.), 42 U.S.C. § 1981, and the Florida Civil Rights Act (Fla.Stat. § 760) and seeks compensatory and punitive damages, reinstatement, back pay, attorney's fees, and prejudgment interest. Therefore, jurisdiction is properly invoked pursuant to 28 U.S.C. § 1331 (granting jurisdiction for federal questions).

The complaint asserts that DeMello, a white female, used racial slurs when referring to Plaintiff and other black employees, that she encouraged Plaintiff to take sick leave and then referred to those days when citing Plaintiff for excessive absences, and that DeMello and Morgan, both white females, subjected Plaintiff to closer scrutiny and criticism than his white counterparts which led to the compilation of a bogus disciplinary record falsely alleging violations of company policy. Defendant denies that DeMello used racial slurs and asserts that the discharge was based on legitimate, nondiscriminatory reasons - i.e., Plaintiff's repeated violations of company policy and procedures. Specifically, Defendant cites two grounds for termination: (1) Plaintiff's unwillingness or inability to abstain from the falsification of delivery records (a serious offense punishable by termination after the first instance); and (2) having three or more written reprimands within a one-year period. Defendant further denies that any willful violation exists to justify punitive damages claim and notes that Plaintiff's claim may be barred by the after-acquired evidence doctrine.

## ANALYSIS

 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). On summary judgment, the district court must view all of the evidence " 'in the light most favorable to the nonmoving party.' " *See Continental Casualty Co. v. Wendt,* 205 F.3d 1258, 1261 (11th Cir.2000). The party seeking summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The opposing party then must offer specific facts demonstrating that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). That party may not rely upon general averments, but rather must show that there is a "substantial conflict in evidence to support a jury question." *See Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). Pleadings alone are insufficient. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 Plaintiff's claims are brought under both Title VII and § 1981. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." § 42 U.S.C. § 2000e–2(a). Section 1981, in turn, "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *See Ferrill v. Parker Group,* 168 F.3d 468, 472 (11th Cir.1999). The elements of a prima facie case are the same for employment claims brought under Title VII and under 42 U.S.C. § 1981. *See Richardson v.*

*Leeds Police Dept.,* 71 F.3d 801, 805 (11th Cir.1995). Similarly, the analysis under Title VII applies when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII. *See Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998).

### A. Direct Evidence

■■■ Discriminatory intent can be established through either direct or circumstantial evidence. *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir.1999). "Direct evidence of discrimination is evidence, that, 'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Id.* (quoting *Burrell v. Board of Trustees of Ga. Military College,* 125 F.3d 1390, 1393 (11th Cir.1997).) Racially derogatory statements can be direct evidence if the comments were (1) made by the decisionmaker responsible for the alleged discriminatory act *and* (2) made in the context of the challenged decision. *See Wheatley v. Baptist Hosp. of Miami, Inc.,* 16 F.Supp.2d 1356, 1359–60, *aff'd,* 172 F.3d 882 (11th Cir.1999) (emphasis added). However, if an alleged statement fails either prong it is considered a "stray remark" and does not constitute direct evidence of discrimination. *Id.*

■■■ Here, Plaintiff alleges two specific instances where DeMello used racial slurs. In one instance, DeMello supposedly called the Plaintiff "a black bastard." While Plaintiff's Motion for Summary Judgment treats this comment as an undisputed fact, this Court disagrees. Not only is this comment disputed (*see Defendant's Exhibit B* (DeMello's Depo.) at 12–

13), it is not even admissible. Plaintiff's testimony was that he did not hear the comment being made, but rather was advised of the comment by a coworker whose last name he could not remember, and who has never testified in this action. *See Defendant's Exhibit A* (Vickers Depo.) at 36–37. Inadmissible hearsay statements may not defeat a motion for summary judgment. *See Pritchard v. South Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir.1996).

■■■ In the other instance, Plaintiff alleges that DeMello referred to a coworker, Leah Hatchett, as "a black bitch." Even in a light most favorable to the Plaintiff, the fact that this comment was directed at a coworker and not in the context of Plaintiff's termination means that this Court should treat it as a "stray remark" and not accept it as direct evidence of discrimination. Furthermore, while Plaintiff may have had a rocky relationship with DeMello, she was not Plaintiff's supervisor at the time of Plaintiff's termination.[5] Therefore the alleged comments fail *both* prongs of the test established in *Wheatley,* they were not made by the decisionmaker nor has Defendant shown that they made in the context of the challenged decision (his termination). Therefore, even in a light most favorable, Plaintiff's evidence fails to establish direct evidence of discrimination. This Court now turns to consider the circumstantial evidence.

### B. Circumstantial Evidence

■■■ Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence of the employer's intent, the court applies the famil-

---

5. At one point in his pleadings, Plaintiff asserts that DeMello and Morgan were roommates. *See Plaintiff's Motion for Summary Judgment* at 3 n. 1 (referring to DeMello Depo, at 8). At oral argument Plaintiff counsel also alluded to a rumor that they were more than just roommates—an assertion that both DeMello and Morgan have denied—even so, the fact that Morgan might have based her decision, at least in part, upon her relationship with DeMello does not constitute evi-

dence of racial discrimination. "Title VII is not a shield against harsh treatment at the workplace. .... The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984) (internal quotes and citations omitted).

iar burden-shifting analysis. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff has the initial burden of establishing a prima facie case of discrimination. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–28 (11th Cir.1997). If a plaintiff meets this burden, he is entitled to a legal presumption that the discrimination was intentional and the burden shifts to the defendant who then has the opportunity to produce evidence that the action was based on legitimate nondiscriminatory reasons. *See id.* at 1528. If the defendant articulates a legitimate reason, the burden shifts back to the plaintiff who may rebut the defendant, by proving that the reason proffered is merely a pretext for intentional discrimination. *See id.* To carry his burden, Plaintiff must "create a genuine issue of material fact as to whether the reasons advanced are pretextual." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1332 (11th Cir.1998).

■■■■ In order to establish a prima facie case of discrimination with circumstantial evidence, the plaintiff must show: (1) he is a member of a protected category; (2) he was subjected to an adverse employment action; (3) either he was replaced by a person outside his protected class or a similarly situated employee outside his category was treated more favorably, and; (4) he was qualified to perform his job. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997); *Joseph v. Publix Super Markets, Inc.,* 983 F.Supp. 1431, 1444 (S.D.Fla.1997). Here it is clear that Plaintiff is a member of a protected category and that he was subjected to an adverse employment action, so he meets the first two prongs. However, in order to establish a prima facie case of discrimination he must also demonstrate that he was qualified to perform his job and either he was replaced by someone outside his protected

class, or a that similarly situated employee was treated more favorably.

### 1. Qualification

■■■■ In determining whether or not an employee was qualified for the job the courts should look to the employee's actual performance. *See Silverstein v. Metroplex Communications, Inc.,* 678 F.Supp. 863 (S.D.Fla.1998); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir.1990). The employee must show that he was performing his job "at a level which met his employer's legitimate expectations." *McDonald,* 898 F.2d at 1160 (citing *Huhn v. Koehring,* 718 F.2d 239, 243 (7th Cir. 1983)); *see also Baker v. Sears, Roebuck & Co.,* 903 F.2d 1515, 1520 (11th Cir.1990) (recognizing an employer's right to establish and enforce performance standards regarding the qualification prong). Here the well-documented record of serious infractions cited by Defendant clearly indicates that Defendant was not satisfied with Plaintiff's level of performance on the morning route. Whether these deficiencies were trumped up, as Plaintiff alleged in his Complaint, raises the issue of pretext which will be discussed more fully below, but even if Plaintiff were qualified for the morning route, he has not shown that he was replaced by a person outside his protected class or that a similarly situated employee outside his category was treated more favorably.

### 2. Not Similarly Situated

■■■■ As discussed above, in order to establish the third element of a prima facie case, Plaintiff must show either that he was replaced by a person outside his protected class or that a similarly situated employee was treated more favorably. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997); *Webb v. R & B Holding Co.,* 992 F.Supp. 1382, 1385 (S.D.Fla.1998); *Joseph v. Publix Super Markets, Inc.,* 983 F.Supp. 1431, 1444 (S.D.Fla.1997). Plaintiff has produced no evidence regarding his replacement, rather he has attempted

to establish the third prong by comparing himself to two coworkers, Francesco "Frank" Montelli and Alexandro Gomez.

▮ The Eleventh Circuit requires "that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges." *Maniccia v. Brown,* 171 F.3d 1364, 1368–69 (11th Cir. 1999); *see also Bates v. Greyhound Lines, Inc.,* 81 F.Supp.2d 1292, 1299 (N.D.Fla. 2000). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Maniccia* 171 F.3d at 1368.

At first glance, Frank Montelli appears to be similarly situated to the Plaintiff. Montelli, a white courier, held the morning route prior to Plaintiff's transfer and admitted to falsifying his delivery records. In fact, it appears to be Plaintiff's contention the Montelli taught him to falsify records and had been doing so for some time prior to Plaintiff's transfer. However, this is where the comparison ends. When Morgan first discovered that Plaintiff was falsifying records, Plaintiff implicated Montelli and both employees received the same consequence—a verbal instruction to correct the behavior. Montelli ceased making false entries after being counseled once, Plaintiff did not.

In the record before this Court, Plaintiff has only supplied evidence that Montelli engaged in a similar practice. Plaintiff has not shown that Montelli continued to make false entries *after* receiving the initial verbal reprimand. The record, however, clearly reflects that after the counseling Plaintiff continued to record false entries. Thus, in terms of the sever-

ity and quantity of the conduct (as measured in degree and frequency) Montelli was not similarly situated to the Plaintiff.

▮ Plaintiff also alleged that Alexandro Gomez, an Hispanic employee, engaged in falsification by using an out-of-service code when his vehicle was, in fact, operable. This allegation was never substantiated, and even if it had been, there is no evidence that management knew this was taking place. Disparate discipline cannot be shown without first showing that the employer was aware of the comparator's misconduct. *See St. Hilaire v. The Pep Boys,* 73 F.Supp.2d 1366, 1371 (S.D.Fla.1999). Thus, not only is this comparison an inadmissible allegation, it is also irrelevant because Plaintiff has not shown that the employer was aware of the alleged misconduct.

Before turning to the issue of pretext, this Court also notes that with respect to the counseling memoranda that Plaintiff received due to his frequent absenteeism, Plaintiff has not shown that any individuals similarly absent were treated differently.[6] Furthermore, employer's proffered reason for terminating employee was not the absenteeism, but rather, the repeated falsification of delivery records—a single instance of which is grounds for termination—and the fact that Plaintiff received three or more written counseling memoranda or warnings within a twelve month period.

## C. Pretext

▮ Assuming arguendo that Plaintiff could satisfy the requirements for establishing a prima facie case, his claim would still fail because Defendant has articulated legitimate grounds for its decision which may only be rebutted by a

---

**6.** While it is true, that DeMello counseled Plaintiff for three absences in May of 1995 which should have been excluded under Defendant's family and medical leave policy, these absences were later excused when Plaintiff challenged the counseling memorandum under Defendant's guaranteed fair treatment (GFT) policy. Furthermore, the coun-

seling was still upheld despite the fact that this correction placed Plaintiff just barely within acceptable levels because Plaintiff's pattern of taking sick days exclusively on Mondays and Fridays (creating four-day weekends) was deemed an abuse of the sick day policy.

showing that the proffered reasons were a pretext for its intentional discrimination. *See Sullivan v. National R.R. Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir.1999); *Young v. General Foods,* 840 F.2d 825 (11th Cir.1988); *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590 (11th Cir.1987). To rebut Defendant's proffered reasons Plaintiff must present more than mere allegations. *See Mayfield v. Patterson Pump Co.,* 101 F.3d 1371 (11th Cir.1996). Plaintiff must present enough evidence for a reasonable fact finder to conclude that more likely than not, discrimination was the real reason for the decision. *See Cason Enters., Inc. v. Metropolitan Dade County,* 20 F.Supp.2d 1331, 1338 (S.D.Fla. 1998).

■ At the summary judgment stage, an employer's assertion that an employee was fired for violating a " 'work rule' ... is arguably pretextual when [the employee] submits evidence (1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1363 (11th Cir. 1999). Here, however, Plaintiff admits that he violated the rule but appears to claim that the violations were unintentional or were the result of improper training.

Similarly, while Plaintiff points to the fact that he received two positive evaluations in the same year—and in one case the same month—as his termination, both evaluations pertained to his performance as a bulk carrier, not his unwillingness or inability to follow proper procedures on his more difficult morning route. Moreover, the evaluations were written by DeMello, one of the supervisors Plaintiff accuses of racism, thus further eroding his claim of racially motivated discrimination.

Plaintiff has also solicited letters from three customers which purport to contradict the Defendant's investigation of Plaintiff's conduct. First, these letters are not properly admissible because they have never been authenticated nor have they been corroborated by any testimony other than the Defendant's own, hence they are inadmissible hearsay and should not be considered as evidence in opposition to a Motion for Summary Judgment. *See* FED. R.EVID. 801 & 901; *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 192 (5th Cir. 1991) ("[U]nauthenticated documents are improper as summary judgment evidence."). Secondly, in at least one of the letters the customer's perceptions are based on what the Plaintiff told the customer. Lastly, even if the letters were reduced to an admissible form prior to trial, they confuse the issue.

■ The issue before the court is not whether Defendant exercised good judgment and came to a proper conclusion about Plaintiff's behavior, rather the issue is whether Defendant did, in fact, rely upon this evidence, or instead, terminated Plaintiff because of his race. The issue of pretext has nothing to do with the employee's perception of fairness. *See Webb v. R & B Holding Co.,* 992 F.Supp. 1382, 1387 (S.D.Fla.1998) ("The employee's perception of himself ... is not relevant. It is the perception of the decision maker that is relevant...."). Simply put, the employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination. *See Kounelis v. Mount Sinai Med. Ctr. of Greater Miami,* 987 F.Supp. 1452, 1457 (S.D.Fla.1997).

Plaintiff has failed to introduce any evidence sufficient to rebut the Defendant's claim that it fired him because of its perception that Plaintiff persisted in falsifying his delivery record and received three or more written memoranda within a twelve month period. Defendant has provided an abundance of evidence to support the basis for its decision, whereas the Plaintiff's assertions of racial discrimination have been shown to be mere allegations unsupported by the admissible evidence.

Lacking a sufficient basis for showing that the decision was based on the Plaintiff's race, the inquiry ends. Taking the facts in the light most favorable to Plaintiff, Defendant's Motion for Summary Judgment must be granted. Thus, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment is GRANTED for the reasons outlined in the above discussion. In addition, it is

ORDERED AND ADJUDGED that the Plaintiff's Motion for Summary Judgment is DENIED. Plaintiff has failed to allege sufficient facts to justify entry of summary judgment in his favor as to the Defendant's allegedly intentional discrimination.