**Samir MOUSA, Plaintiff,**

v.

**LAUDA AIR LUFTFAHRT, A.G., Defendant.**

**No. 01–4758–CIV.**

United States District Court, S.D. Florida, Miami Division.

March 31, 2003.

---

Michael L. Walker, Michael Lynn Walker, Florin, Roebic & Walker, Palm Harbor, FL, for Samir Mousa.

Courtney Blair Wilson, Gaye Lon Huxoll, Shook, Hardy & Bacon, Miami, FL, for Lauda–Air Luftfahrt, A.G.

*ORDER GRANTING SUMMARY JUDGMENT AS TO RELIGIOUS DISCRIMINATION CLAIMS AND ORDER DECLINING SUPPLEMENTAL JURISDICTION OF BREACH OF CONTRACT CLAIM*

MORENO, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (**D.E. No. 22**), filed on *October 11, 2002.* Plaintiff Samir Mousa sued Defendant Lauda Air Luftfahrt, A.G. ("Lauda Air") for religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act (the "FCRA") as well as for common law breach of contract. Because the Court finds that Plaintiff has failed to demonstrate that Lauda Air is an "employer" within the meaning of Title VII, the Court lacks subject matter jurisdiction over this claim. While the Court finds that it has subject matter jurisdiction under the FCRA, the Court finds that Plaintiff has failed to make out a *prima facie* case of religious discrimination based upon either direct or circumstantial evidence. Finally, because it appears to a legal certainty that the breach of contract claim is for less than the monetary threshold required for diversity jurisdiction, the Court finds that it does not have independent subject matter jurisdiction over this claim and declines supplemental jurisdiction.

## I. BACKGROUND

In February of 1999, Plaintiff applied for the position of Lauda Air's "Area Manager Americas." On February 23, 1999, after initial screening by an employment search firm, Lauda Air interviewed Plaintiff and selected him for the position. Michael Lewin, Director International Sales, Martin Wiesinger, Executive Vice President Commercial, and Erika Loeschl, Acting Area Manager Americas, were present at the final round of interviews. Later that day, the parties executed a letter of intent memorializing several material terms of an anticipated employment agreement. Cmplt. Ex. C. The parties expressly agreed that Plaintiff's employment would be *terminable at will* with *four weeks notice. Id.* Plaintiff tendered his resignation to his former employer of fifteen years the following day.

On March 2, 1999, Plaintiff attended a marketing meeting led by Ms. Loeschl. In response to Plaintiff's suggestion that Lauda Air target the ethnic market, Ms. Loeschl allegedly inquired whether Plaintiff was Muslim.[1] Plaintiff testified that he answered in the affirmative and that Ms. Loeschl replied: "We at Lauda Air have our own religious values and ethics and we expect all of our management team to

---

1. Ms. Loeschl informed Mr. Lewin and Mr. Wiesinger of Plaintiff's suggestion to target the ethnic market. Loeschl Dep. at 25–26.

adhere by it and nothing else." Ms. Loeschl denies that this exchange ever took place. Prior to the execution of a formal employment agreement and commencement of his employment on March 22, 1999, Lauda Air terminated Plaintiff's employment and so advised him on March 16, 1999.

After Lauda Air elected to terminate his employment, Plaintiff filed a charge of religious discrimination with the United States Equal Employment Opportunity Commission and subsequently filed this lawsuit after timely exhausting his administrative remedies. In the instant case, Plaintiff alleges three causes of action: (1) religious discrimination under Title VII; (2) religious discrimination under the FCRA; and (3) common law breach of contract.

First, Lauda Air argues that the Court is without jurisdiction to hear the religious discrimination claims because Lauda Air does not have sufficient domestic employees to be subject to either Title VII or the FCRA. Second, Lauda Air argues that Plaintiff has failed to make out a *prima facie* case under Title VII and the FCRA based on either direct or circumstantial evidence of discrimination. Lauda Air contends that the record is devoid of direct statements of discriminatory intent and that Plaintiff has failed to provide sufficient evidence that the relevant decision-makers knew his religion or treated non-Muslims differently. Third, Lauda Air argues that, even if Plaintiff has made out a *prima facie* case, it has articulated legitimate non-discriminatory reasons for terminating Plaintiff's employment. Finally, Lauda Air argues that Plaintiff's contract damages should be limited to his pro-rata salary for the four week notice of termination period.

Because the Court finds that Plaintiff has failed to demonstrate that Lauda Air is an "employer" within the meaning of Title of VII, the Court lacks subject matter jurisdiction over this claim and therefore need not address Lauda Air's remaining substantive arguments. While the Court finds that it has subject matter jurisdiction under the FCRA, the Court finds that Plaintiff has failed to make out a *prima facie* case of religious discrimination, because there is insufficient evidence in the record that the relevant decision-makers had knowledge of Plaintiff's religion or Ms. Loeschl's allegedly discriminatory statement at the time they made the relevant employment decisions. Finally, because the Court agrees that Plaintiff's contract damages, if any, are limited to those accrued during the four-week notice of termination period and therefore appear to a legal certainty to be less than the requisite monetary threshold for diversity jurisdiction, the Court finds that it does not have independent subject matter jurisdiction over this claim and declines supplemental jurisdiction.

## II. LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct.

2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. TITLE VII

#### 1. Definition of "Employer"

The first issue before the Court is whether Lauda Air is an "employer" subject to Title VII. A district court lacks subject matter jurisdiction to entertain a suit against an entity that does not fall under Title VII's statutory definition of "employer." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1340–41 (11th Cir. 1999); *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359 (11th Cir.1994). "[A] plaintiff must show that her 'employer' had fifteen or more employees for the requisite period provided under the statute before her Title VII claims can be reached." *Lyes*, 166 F.3d at 1340–41.

Under Title VII it is "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e–2(a). Simply put, Title VII is only applicable to individuals employed by an "employer" with fifteen or more "employees." Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Id.* § 2000e(b).

"Person" is defined to include a corporation. *Id.* § 2000e(a). Title VII defines "employee" as "an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." *Id.* § 2000e(f). The "current year" refers to the year in which the alleged unlawful practice occurred. *Dumas v. Town of Mt. Vernon*, 612 F.2d 974, 979 n. 4 (5th Cir.1980), *rev'd on other grounds, Larkin v. Pullman-Standard Div., Pullman, Inc.*, 854 F.2d 1549 (11th Cir.1988); *EEOC v. Pettegrove Truck Serv., Inc.*, 716 F.Supp. 1430, 1431 (S.D.Fla.1989).

Because the alleged discrimination took place in 1999, the relevant time period for purposes of Title VII is 1998 and 1999. It is undisputed that Lauda Air had more than fifteen employees in 1998 and 1999. *See* Lauda Air's Answer to Plaintiff's Interrog. No. 1 ("During calendar year 1998, there were 1,516 persons on [Lauda Air's] payroll. During calendar year 1999, there were 1,726 persons on [Lauda Air's] payroll."). The vast majority of these individuals were foreign citizens based abroad who worked exclusively outside of the United States. *See id.* ("Only one of the individuals on [Lauda Air's] payroll in 1998 or 1999, who did not work in the United States, was a U.S. citizen."). It is undisputed that domestic employees who worked for Lauda Air "for each working day in each of twenty or more calendar weeks" during the relevant time period are included in the jurisdictional count. On the other hand, at issue is whether the

following categories of individuals are included: (i) foreign citizens working exclusively outside of the United States; (ii) United States citizens working exclusively outside of the United States; (iii) foreign citizens based abroad who performed any duties within the United States; and (iv) foreign citizens based abroad who performed duties in the United States "for each working day in each of twenty or more calendar weeks" during the relevant time period.

### 2. Foreign Citizens Based Abroad

■ The Court first must determine whether foreign citizens based abroad who worked exclusively outside of the United States are included in Title VII's fifteen-employee jurisdictional count. Shortly before the Civil Rights Act of 1991 (the "1991 Act") took effect, the Supreme Court in *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("*Aramco*"), held that Title VII did not apply extraterritorially to regulate the employment practices of United States employers who employed United States citizens abroad. *Id.* at 246, 111 S.Ct. 1227. Based upon Aramco, United States employers were not liable for employment discrimination occurring against United States citizens outside of the United States. Following the *Aramco* decision, the 1991 Act took effect, giving Title VII limited extraterritorial reach to include the employment of United States citizens abroad. Congress effected this purpose in part through the amendment of two provisions of Title VII. First, Congress expanded the definition of "employee" to include United States citizens employed abroad. 42 U.S.C. § 2000e(f) now provides that "[w]ith respect to employment in a foreign country, such term [employee] includes an individual who is a *citizen of the United*

*States.*" (Emphasis added). Second, Congress amended 42 U.S.C. § 2000e–1(a), which now provides: "This subchapter shall not apply to an employer with respect to the employment of aliens outside any State." While Congress expressly addressed the issue of employees abroad, it did not extend the reach of Title VII to foreign citizens employed abroad. Nor did Congress alter Section 2000e–1(c)(2) which excludes from Title VII's coverage "the foreign operations of an employer that is a foreign person not controlled by an American employer." Accordingly, even though Title VII does not explicitly state that employees of foreign corporations must work in the United States to be included in the jurisdictional count, the 1991 Act and the statutory language of Title VII strongly support this proposition.

Consistent with the above statutory analysis, the majority of courts that have addressed the issue have found that foreign citizens employed abroad who work exclusively outside of the United States do not count towards the fifteen-employee jurisdictional minimum. *See Iwata v. Stryker Corp.*, 59 F.Supp.2d 600, 604 (N.D.Tex.1999) (finding that "[n]on-citizens working outside the United States ... are not considered employees"); *Greenbaum v. Svenska Handelsbanken*, 979 F.Supp. 973, 983 (S.D.N.Y.1997) (finding that "non-U.S. citizens employed outside of the United States are not deemed 'employees' as that term is defined under Title VII"); *Minutillo v. Aqua Signal Corp.*, No. 96 C 3529, 1997 WL 156495, *2 (N.D.Ill. Mar.31, 1997) (finding that "only a foreign corporation's United States employees may count towards the jurisdictional minimum"); *Russell v. Midwest–Werner & Pfleiderer, Inc.*, 955 F.Supp. 114, 115 (D.Kan.1997) ("Unless an American citizen, a person employed abroad is not an 'employee' un-

der Title VII."); *Kim v. Dial Serv. Int'l, Inc.,* No. 96 Civ. 3327(DLC), 1997 WL 5902, *3 (S.D.N.Y. Jan.8, 1997) (finding that "the foreign employees of a foreign corporation do not count towards the statutory minimum" and that "the relevant group is the number of employees in the United States"); *Robins v. Max Mara, U.S.A., Inc.,* 914 F.Supp. 1006, 1009 (S.D.N.Y.1996) ("Only those employees ... who work in the United States for twenty or more calendar weeks per year are to be counted for purposes of determining whether the enterprise is covered by ... Title VII"); *Rao v. Kenya Airways, Ltd.,* No. 94 Civ. 6103(CSH), 1995 WL 366305, *2 (S.D.N.Y. June 20, 1995) (finding that "foreign employees of a foreign corporation are not considered employees for purposes of the statute"); *but see Wildridge v. IER, Inc.,* 65 F.Supp.2d 429, 431 (N.D.Tex. 1999) ("The exemption for overseas operations of foreign companies speaks only to the substantive provisions of Title VII[and] does not preclude counting employees of these foreign entities for purposes of determining whether the minimum-employee threshold is met.").

Similarly, at least one district court has found that only those "employees" that are potentially affected by discriminatory policies may be counted to determine whether an employer is subject to Title VII. *Goyette v. DCA Adver., Inc.,* 830 F.Supp. 737, 745 (S.D.N.Y.1993) (finding that foreign employees are excluded in determining whether the jurisdictional minimum is met). Additionally, several district courts have found that individuals that do not fall within the statutory definition of "employee" may not be counted in determining whether an entity is an "employer" within the meaning of Title VII. *See, e.g., Laurie v. Ala. Ct. of Crim. App.,* 88 F.Supp.2d 1334, 1347–50 (M.D.Ala.2000), *aff'd,* 256 F.3d 1266 (11th Cir.2001) (finding that elected judges, staff attorneys, junior staff attorneys and law clerks are excluded from the statutory definition of "employee" and thus not included in jurisdictional count); *Perry v. City of Country Club Hills,* 607 F.Supp. 771, 775 (E.D.Mo.1983) (finding that elected officials are excluded from the statutory definition of "employee" and thus not included in the jurisdictional count).

Faced with a near unanimity of courts that have squarely addressed the issue, Plaintiff primarily relies upon *Morelli v. Cedel,* 141 F.3d 39 (2d Cir.1998), to support his contention that foreign citizens based abroad count towards the fifteen-employee jurisdictional minimum. In *Morelli,* the Second Circuit held that employees based abroad are counted in determining whether a United States branch of a foreign employer is subject to the Age Discrimination in Employment Act of 1967 ("ADEA"). The *Morelli* court looked to the plain meaning of the definition of "employee" under the ADEA. *Id.* at 44. "[T]here is no requirement that an employee be protected by the ADEA to be counted; an enumeration, for the purpose of ADEA coverage of an employer, includes employees under age 40, who are also unprotected. The nose count of employees relates to the scale of the employer rather than to the extent of protection." *Id.* at 44–45 (internal citation omitted). The *Morelli* court also relied upon the rationale of Title VII's jurisdictional limit, because it found that the ADEA was based in large part on Title VII. *Id.* at 45. The *Morelli* court found that the rationale behind Title VII's minimum-employee requirement, compliance and potential litigation costs, the protection of intimate and personal relations existing in small businesses, potential effects on competition and the econ-

omy, and the constitutionality of Title VII under the Commerce Clause, militated in favor of an expansive definition of employee in that context. *Id.*

Relying upon *Morelli*, Plaintiff argues that similar reasoning applies to Lauda Air, because it is an international employer with numerous resources, aircraft and employees. The Court disagrees. Importantly, *Morelli* was an ADEA case and was admittedly contrary to every preceding district court decision. *Id.* at 45 n. 1 ("We do not follow the district courts that have concluded-without apparent exception-that only the domestic employees of a foreign employer are counted."). Additionally, the ADEA counts all workers in its definition of "employee" but extends its protection only to those workers who are over 40 years of age, while Title VII's coverage and definition of "employee" appear co-extensive. Otherwise, businesses could avoid being subject to the ADEA simply by failing to hire enough older workers. No such danger exists under Title VII. Moreover, unlike Title VII, the ADEA does not contain a provision excluding from its application "the employment of aliens outside of any State." 42 U.S.C. § 2000e–1(a). The *Morelli* court did not address this statutory language.

The Court does not find *Morelli* persuasive and finds, based upon Title VII's statutory language and the near unanimity of lower courts, that Title VII's coverage and definition of "employee" are co-extensive. 42 U.S.C. § 2000e(f) supports this reading of the statute. If the definition of "employee" included all individuals working abroad, there would be no reason for Congress to expressly include United States citizens. Accordingly, the Court finds that foreign citizens based abroad who worked exclusively outside of the United States are not included in the fifteen-employee jurisdictional count.

### 3. Evidence of Qualified Employees

Because the Court finds that foreign citizens based abroad who worked exclusively outside of the United States are not included in the jurisdictional count under Title VII, Plaintiff bears the burden of providing sufficient evidence that Lauda Air employed "fifteen or more [qualified] employees for each working day in each of twenty or more calendar weeks" in 1998 or 1999. Clearly, domestic employees based in the United States who worked for Lauda Air for a sufficient duration during the relevant time period are included in the jurisdictional count. Additionally, the above authorities support the contention that foreign citizens based abroad who worked in the United States for a sufficient duration during the relevant time period also are included in the jurisdictional count. Because Plaintiff has failed to establish evidence of at least fourteen employees who worked for a sufficient duration in the United States during the relevant time period, the Court need not decide whether the one United States citizen based abroad need be included in the jurisdictional count.

Lauda Air claims that "at all times throughout calendar years 1998 and 1999, it had: (a) fewer than fifteen individuals on its payroll who worked each working day in each of twenty or more calendar weeks in the United States; (b) fifteen or more individuals on its payroll who may have occasionally traveled to the United States as part of their job duties but did not work each working day in twenty or more calendar weeks in the United States; and (c) fifteen or more individuals on its payroll who did not perform duties in the United States as part of their job duties." Lauda

Air's Answer to Plaintiff's Interrog. No. 1; *see also* Fitz Decl. ¶ 6 ("At no time did Lauda Air have fifteen or more employees in the United States for each working day in each of twenty or more calendar weeks during calendar years 1998 and 1999.").

■ A defendant is entitled to summary judgment in its favor if the plaintiff fails to produce sufficient evidence to show that the defendant had fifteen or more employees during the relevant time period. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610 (7th Cir.2002). At oral argument on January 28, 2003, the Court indicated that it was unable to determine the number of qualified employees based upon the limited evidence in the record. While the Court could have granted summary judgment for Lauda Air at that point, the Court permitted Plaintiff to propound interrogatories as to the number of domestic employees employed by Lauda Air during the relevant time period. Based upon record evidence as supplemented by Lauda Air's answers to these interrogatories,[2] the Court finds that Plaintiff has failed to demonstrate that Lauda Air is an "employer" subject to Title VII.

The following evidence is available in the record from deposition and affidavit testimony. Lauda Air is a passenger airline headquartered in Vienna, Austria. Fitz Decl. ¶ 2. Lauda Air is an Austrian corporation, is not controlled by an American entity and is not a subsidiary of an American entity. *Id.* ¶ 4. Lauda Air's only place of business in the United States in 1998

and 1999 was in Miami, Florida. *Id.* ¶ 5. It is undisputed that Lauda Air employed at least six or seven permanent employees at its sales office in Miami Beach and one station manager at Miami International Airport during 1998 and 1999. *Id.* ¶ 7; Lewin Dep. at 51–52; Wiesinger Dep. at 85–88. Besides these eight individuals, Lauda Air asserts that it had no other permanent employees in the United States during the relevant time period. Fitz Decl. ¶ 7; Lewin Dep. at 52. Additionally, Lauda Air's answers to Plaintiff's interrogatories indicate that Lauda Air had eight individuals on its payroll in 1998 and fourteen individuals on its payroll in 1999 that worked exclusively in the United States. *See* Lauda Air's Answer to Plaintiff's Interrog. No. 2. However, the record is unclear to what extent these individuals overlap with the eight permanent employees outlined in the deposition and affidavit testimony discussed above. Furthermore, even assuming that these individuals do not overlap with the eight permanent employees outlined above, it is unclear whether these individuals worked for "each working day in each of twenty or more calendar weeks" during the relevant time period.

Plaintiff also correctly notes that Lauda Air did not include Mr. Wiesinger, Mr. Lewin and Ms. Loeschl in the calculations outlined above, even though their deposition testimony confirms that they were present at various times in the United States in 1999. The record demonstrates that Mr. Lewin was based in Austria, but made two brief visits to Miami in 1998 and

---

2. While Plaintiff argues that Lauda Air was less than forthcoming in its responses to these interrogatories, at no time did Plaintiff ask the Court to compel more complete responses. It is not the Court's role to conduct discovery or establish jurisdictional prerequi-

sites for Plaintiff. The Court, on its own, had already reopened the discovery period in order to allow Plaintiff's counsel to propound interrogatories *before* ruling on the Motion for Summary Judgment.

1999. Lewin Dep. at 12, 25, 29, Ex. 7, Ex. 9; Wiesinger Dep. at 83. The record demonstrates that Mr. Wiesinger also was based in Austria, but made one brief trip to Miami in 1999. Lewin Dep. at Ex. 7; Wiesinger Dep. at 16, 20, 24, 83, Ex. 3. The record further demonstrates that Ms. Loeschl was based in Austria, but worked for three to four months as Acting Manager Americas in Miami, although she occasionally attended meetings outside of the United States during this time period. Loeschl Dep. at 7–8, 10; Wiesinger Dep. at 15–16. Accordingly, it appears that Mr. Lewin, Mr. Wiesinger and Ms. Loeschl are foreign citizens based in Austria, and there is no evidence in the record that they worked in the United States "for each working day in each of twenty or more calendar weeks" during the relevant time period.

▇ Plaintiff further notes that Lauda Air also employed flight crews, consisting of two pilots and between six and nine flight attendants. Wiesinger Dep. at 88–89. Flight crews were required to take rest periods after international flights and did not immediately return to Europe after landing in Miami. Lewin Dep. at 55–56. Lauda Air flights arrived in Miami between three and five times per week during 1998 and 1999. Wiesinger Dep. at 90. However, there is insufficient evidence in the record specifying the exact number of crew members, the frequency of flights or the length of time the crew members remained in Miami during the relevant time period. Accordingly, it is unclear whether these individuals worked for Lauda Air in the United States for "each working day in each of twenty or more calendar weeks."

While Plaintiff appears to argue that an individual need only step foot in the United States in order to be included in the jurisdictional count, the Court finds that, in order to be considered an "employee" within the meaning of Title VII, an individual must work in the United States for "each working day in each of twenty or more calendar weeks" during the relevant time period.

Under any calculation based on the above evidence, the Court finds that Plaintiff has failed to satisfy his burden of demonstrating that Lauda Air is an "employer" subject to Title VII. At most Plaintiff can point to eight employees that worked for Lauda Air in the United States for a sufficient duration during the relevant time period. Because Plaintiff is unable to establish at least fourteen such employees, the Court need not decide whether the one United States citizen based abroad must be included in the jurisdictional count. Nonetheless, the Court also notes that it is unclear whether that individual worked for Lauda Air for a sufficient duration during the relevant time period. Accordingly, the Court finds that it does not have jurisdiction under Title VII and therefore GRANTS summary judgment in favor of Lauda Air as to Count I of the Complaint.[3]

## B. FLORIDA CIVIL RIGHTS ACT

### 1. Jurisdiction: Definition of "Employee"

▇ The next issue before the Court is whether the statutory language of the FCRA requires a different jurisdictional result. The FCRA's fifteen-employee min-

---

**3.** Even if the Court had jurisdiction under Title VII, summary judgment in favor of Lauda Air would be appropriate based upon the substantive analysis discussed *infra* in the context of the FCRA.

imum also is jurisdictional. *Scelta v. Delicatessen Support Servs., Inc.,* 57 F.Supp.2d 1327, 1343–44 (M.D.Fla.1999); *Hazel v. Sch. Bd. of Dade County,* 7 F.Supp.2d 1349, 1352 (S.D.Fla.1998); *Regency Towers Owners Ass'n, Inc. v. Pettigrew,* 436 So.2d 266, 267–68 (Fla. 1st DCA 1983), *pet. denied,* 444 So.2d 417 (1984) (Commission on Human Relations). Based upon the plain meaning of the FCRA's statutory language and binding Eleventh Circuit precedent, the Court finds that it does.

Under the FCRA it is "an unlawful employment practice for an employer [t]o discharge ... any individual ... because of such individual's ... religion." Fla. Stat. § 760.10(1)(a). The FCRA defines an "employer" as "any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." *Id.* § 760.02(7). "Person" is defined to include a corporation. *Id.* § 760.02(6). Again, the current year refers to the year during which the alleged discrimination took place, making 1998 and 1999 the relevant time period for purposes of the FCRA. *Regency Towers,* 436 So.2d at 266–67.

The Court begins with the proposition that federal case law construing Title VII is persuasive authority for interpretation of the FCRA, because the FCRA mirrors and is patterned after Title VII. *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998), *cert. denied,* 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998); *Vickers v. Fed. Express Corp.,* 132 F.Supp.2d 1371, 1377 (S.D.Fla.2000); *McKenzie v. EAP Mgmt. Corp.,* 40 F.Supp.2d 1369, 1374 n. 1 (S.D.Fla.1999); *King v. Auto Truck Indust. Parts & Supply, Inc.,* 21 F.Supp.2d 1370, 1374 n. 4

(N.D.Fla.1998); *Resley v. Ritz–Carlton Hotel Co.,* 989 F.Supp. 1442, 1446–47 (M.D.Fla.1997); *Fla. Dep't of Cmty. Affairs v. Bryant,* 586 So.2d 1205, 1209 (Fla. 1st DCA 1991).

The Court notes that there is a dearth of Florida case law interpreting the relevant provisions of the FCRA. In fact, the parties were unable to direct the Court to any Florida state decisions on point. However, in *Sinclair v. De Jay Corp.,* 170 F.3d 1045 (11th Cir.1999), the Eleventh Circuit held that the plain meaning of the FCRA included employees outside of Florida (but within the United States) in the jurisdictional count. *Id.* at 1046 ("Nothing in the statute's plain language requires a showing that fifteen employees were employed in the state of Florida."). In response to defendant's argument that including out-of-state employees was inconsistent with the parochial concerns of the FCRA, the Eleventh Circuit emphasized the FCRA's purpose of protecting Floridians from discrimination. *Id.* at 1047. The Eleventh Circuit also refused to follow the decisions of federal district courts that have interpreted related language in Title VII to exclude foreign citizens based abroad from the jurisdictional count and cited *Morelli* as persuasive authority. *Id.* at 1048 ("[T]he plain and unambiguous language of the FCRA requires only that an employer employ fifteen persons to qualify as a statutory employer under the FCRA. It says nothing about where the employees must work.").

While the Court is inclined to reach the same jurisdictional conclusion under both Title VII and the FCRA, especially considering that the FCRA was modeled after and employs nearly identical language to Title VII, the Court finds that *Sinclair* is controlling and requires a dif-

ferent result. The language employed by the Florida legislature is clear and unambiguous, and there is no geographical limitation on the face of the statute. Moreover, the FCRA does not contain clauses similar to those in Title VII limiting its extraterritorial effect, nor is its meaning further articulated by an amendment history similar to that of Title VII. While even the *Sinclair* court hinted that a different result may carry the day in the context of foreign citizens based abroad, the Court will not legislate from the bench. *See id.* at 1048 ("Even assuming … that *Morelli* was wrongly decided, we are not inclined to compare relations between the United States and foreign countries to relations between the states."). Accordingly, the Court is compelled to follow precedent and not read anything into a law not specifically provided by the legislature. Thus, the Court cannot exclude foreign citizens based abroad who worked exclusively outside of the United States from the fifteen-employee jurisdictional count. Therefore, the Court has jurisdiction under the FCRA.

### 2. Religious Discrimination[4]

■ The Court again begins with the proposition that federal case law construing Title VII is persuasive authority for interpretation of the FCRA, since the FCRA mirrors and is patterned after Title VII. *Harper,* 139 F.3d at 1387; *Vickers,* 132 F.Supp.2d at 1377; *McKenzie,* 40 F.Supp.2d at 1374 n. 1; *King,* 21

F.Supp.2d at 1374 n. 4; *Resley,* 989 F.Supp. at 1446–47; *Bryant,* 586 So.2d at 1209. Plaintiff bears the burden of establishing a *prima facie* case of discrimination either by pointing to direct evidence of discriminatory intent or creating an inference of discrimination through circumstantial evidence. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–28 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998); *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990). Direct evidence establishes discriminatory intent "without inference or presumption." *Earley,* 907 F.2d at 1081 (citing *Carter v. City of Miami,* 870 F.2d 578, 581–82 (11th Cir.1989)). Put another way, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate … constitute direct evidence." *Id.* (citing *Carter,* 870 F.2d at 582). On the other hand, circumstantial evidence only "suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence." *Id.* at 1081–82.

#### a. Direct Evidence

■ Direct evidence of employment discrimination generally consists of a statement by a person with control over the employment decision "sufficient to prove discrimination without inference or presumption." *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993) (citing *Carter,* 870 F.2d at 581–82). The statement must reflect a "discriminatory …

---

4. Plaintiff's FCRA claim is supported by independent subject matter jurisdiction based upon diversity of citizenship. 28 U.S.C. § 1332. Plaintiff alleges that he is "a citizen and resident of Pinellas County [Florida]." Cmplt. ¶ 6. Plaintiff also alleges that Lauda Air is "a foreign corporation authorized and doing business in [Florida]." *Id.* ¶ 7. While

Plaintiff does not allege Lauda Air's principal place of business, there is sufficient evidence in the record indicating that Lauda Air's principal place of business was in Austria. *See* Fitz Decl. ¶¶ 2–5. Additionally, it does not appear to a legal certainty that Plaintiff will be unable to exceed the $75,000 monetary threshold required for diversity jurisdiction.

attitude correlating to the discrimination ... complained of." *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990). The statement also "must be made by a person involved in the challenged decision." *Trotter v. Bd. of Trs. of Univ. Of Ala.,* 91 F.3d 1449, 1453–54 (11th Cir.1996). Plaintiff cites his brief exchange with Ms. Loeschl at the March 2, 1999, marketing meeting as direct evidence of discriminatory intent.[5] In response to Plaintiff's acknowledgment of his Muslim faith, Ms. Loeschl stated: "We at Lauda–Air have our own religious values and ethics and we expect all of our management team to adhere by it and nothing else." Because the Court finds that the statement at issue, even if credited as direct evidence of discriminatory intent,[6] was not made or known by a person with control over the relevant employment decisions, Plaintiff has failed to make out a *prima facie* case based upon direct evidence of discriminatory intent.

■ Lauda Air argues that the only decision-makers for purposes of the FCRA were Mr. Lewin and Mr. Wiesinger. While Ms. Loeschl was aware of Plaintiff's religion, Ms. Loeschl was not responsible for the ultimate decision to terminate Plaintiff's employment. Lewin Dep. at 14–15, 28–29, 53–54; Wiesinger Dep. at 78–79, 105–07; Plaintiff's Dep. at 58; Loeschl Dep. at 12. While there is evidence in the record that Ms. Loeschl had "some participation" in the decision-making *process* and delivered information and gave recommendations to Mr. Lewin and Mr. Wiesinger, it is undisputed in the record that Mr. Lewin and Mr. Wiesinger were the final decision-makers. Lewin Dep. at 14–15, 28–29; Wiesinger Dep. at 42, 56, 105. For instance, Ms. Loeschl provided some of the information upon which Lauda Air based its termination of Plaintiff. Lewin Dep. at 29–31; Wiesinger Dep. at 50, 53, 55–57, 61, 67–68, 107. Ms. Loeschl conveyed Plaintiff's suggestion to target the ethnic market as well as his desire to bring in his own staff to Mr. Lewin and Mr. Wiesinger. Loeschl Dep. at 26–30. Ms. Loeschl also was present during Plaintiff's interview and asked questions. *Id.* at 11–12 ("They asked me also to have a look and to ask a question even sales wise but not to tell them what I was thinking or my opinion or whatever, just to be present."); Plaintiff's Dep. at 99–100. Beside this minimal participation in the process, there is no evi-

---

**5.** For purposes of summary judgment, the Court presumes that the alleged exchange transpired in accordance with Plaintiff's testimony.

**6.** The Court notes that it is not entirely clear whether Ms. Loeschl's statement would constitute direct evidence of discriminatory intent even if she were a relevant decision-maker. Lauda Air argues that the statement does not reflect that Plaintiff's religion was incompatible with the unspecified "religious values and ethics" of Lauda Air and cannot alone demonstrate animus toward the Islamic faith. *EEOC v. Wiltel, Inc.,* 81 F.3d 1508, 1516 (10th Cir.1996). Essentially, Lauda Air argues that the statement requires too much inference to be treated as direct evidence of discriminatory intent. Lauda Air argues that telling Plain-

tiff how he would be expected to act as a manager is different than telling him that he was disqualified to be a manager and assumes that Plaintiff would be a part of Lauda Air's management team. Furthermore, even Plaintiff's own testimony evidences that he *inferred* discrimination based upon the statement. Plaintiff's Dep. at 169–70. Moreover, the Eleventh Circuit has held that similar statements in isolation do not constitute direct evidence of discrimination. *See, e.g. Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321, 1323 n. 11 (11th Cir.1998); *Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 962 (11th Cir. 1997); *Clark,* 990 F.2d at 1226; *Carter,* 870 F.2d at 582; *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n. 6 (11th Cir.1987).

dence in the record that Ms. Loeschl had any decision-making authority with respect to the relevant employment decisions.

Moreover, there is no evidence in the record that Mr. Lewin and Mr. Wiesinger were aware of Plaintiff's religion at the time they made the relevant decisions. Mr. Lewin and Mr. Wiesinger testified that they were not aware of Plaintiff's religion before the initiation of this lawsuit. Lewin Dep. at 32, 38–39, 43–44, 48; Wiesinger Dep. at 69–70, 97–98. Ms. Loeschl testified that she never discussed Plaintiff's religion with Mr. Lewin or Mr. Wiesinger or anyone else. Loeschl Dep. at 47. There also is evidence that Lauda Air did not inquire about or take into account the religion of Plaintiff or any other applicant for employment. Wiesinger Dep. at 71–72, 99; Loeschl Dep. at 41–42. Even Plaintiff testified that he never discussed his religion with Mr. Lewin or Mr. Wiesinger and that he had no reason to believe that they knew or cared that he is Muslim. Plaintiff's Dep. at 119–20. While Plaintiff's resume indicated that he was from Syria and spoke Arabic, Plaintiff conceded that it was unreasonable to conclude that a person was Muslim based solely upon this information. Plaintiff's Dep. at 82.

Based upon the evidence in the record, the Court finds that Ms. Loeschl did not substantially participate in the ultimate decision to terminate Plaintiff's employment and did not discuss Plaintiff's religion with Mr. Lewin or Mr. Wiesinger, the relevant decision-makers for purposes of the FCRA. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) (stating that "stray remarks ... cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers" and that there must be "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision"); *id.* at 251, 109 S.Ct. 1775 (plurality opinion of Brennan, J.) (stating that plaintiff must show that remarks played a part in a particular hiring decision). Accordingly, the Court finds that Ms. Loeschl's statement, while admittedly inappropriate, is nothing more than a stray remark insufficient to support a *prima facie* case. *Rubinstein v. Adm'rs of Tulane Educ. Fund,* 218 F.3d 392, 400–01 (5th Cir.2000), *cert. denied,* 532 U.S. 937, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001); *Wiltel, Inc.,* 81 F.3d at 1515; *Khan v. Popeyes of Md., Inc.,* 179 F.Supp.2d 548, 555 (D.Md.2002), *aff'd,* 34 Fed.Appx. 946 (4th Cir.2002), *cert. denied,* ___ U.S. ___, 123 S.Ct. 899, 154 L.Ed.2d 812 (2003).

### b. Circumstantial Evidence

■ The Title VII burden shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies when a discrimination plaintiff presents FCRA claims based upon circumstantial evidence. Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Combs,* 106 F.3d at 1527–28. Once the plaintiff establishes a *prima facie* case, a presumption is created that the employer unlawfully discriminated against the employee. *Id.* at 1528. The effect of the presumption of discrimination is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action. *Id.* "Employees may utilize two theories in asserting religious discrimination claims: disparate treatment and failure to accommodate. The dispa-

rate treatment theory mirrors the burden-shifting analysis set forth in *McDonnell Douglas.*" *Hellinger v. Eckerd Corp.*, 67 F.Supp.2d 1359, 1362 (S.D.Fla.1999) (internal citations omitted). To state a *prima facie* case for disparate treatment under Title VII, a plaintiff must establish that: (i) he is a member of a protected class; (ii) he experienced an adverse employment action; (iii) a similarly situated employee who is not a member of plaintiff's protected class was treated more favorably; and (iv) he was qualified for the job. *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir.2002), *cert. denied,* ── U.S. ──, 123 S.Ct. 872, 154 L.Ed.2d 776 (2003); *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir.2000). Importantly, the Eleventh Circuit also has held that a plaintiff alleging religious discrimination must demonstrate that the challenged employment action was made by someone who was aware of his religion. *Lubetsky,* 296 F.3d at 1305.

 Lauda Air argues that Plaintiff cannot establish a *prima facie* case based upon circumstantial evidence of discrimination for two reasons: (i) the relevant decision-makers were not aware of Plaintiff's religion, and (ii) there is no evidence that any non-Muslim was treated more favorably. Because the Court finds that there is insufficient evidence that the relevant decision-makers, Mr. Lewin and Mr. Wiesinger, were aware of Plaintiff's religion at the time they made the relevant employ-

ment decisions, the Court need not reach the alternate argument raised by Lauda Air.[7] Accordingly, the Court finds that Plaintiff has failed to make out a *prima facie* case under the FCRA based upon circumstantial evidence of religious discrimination.

In *Lubetsky,* the Eleventh Circuit affirmed summary judgment because the plaintiff had failed to present any evidence that the decision-maker was aware of plaintiff's religion when he decided to rescind plaintiff's offer of employment. *Id.* at 1306–07. While the plaintiff had disclosed his religion to a recruiter employed by the defendant, there was no evidence that the recruiter disclosed plaintiff's religion to the individual decision-maker who elected to rescind plaintiff's offer of employment. *Id.* at 1303–04. "In this case, [plaintiff] failed to establish a *prima facie* case of intentional religious discrimination by [defendant] because he did not present any evidence that the decision-maker knew of his religion. Instead, all of the evidence indicated that [the decision-maker] was unaware of [plaintiff]'s religion." *Id.* at 1306.

Based upon *Lubetsky* and the above authorities, the Court finds that Plaintiff has failed to provide sufficient evidence that the relevant decision-makers knew his religion at the time they made the relevant employment decisions. The Court set out the available record evidence in detail *supra* in its discussion of direct evidence of discriminatory intent and need not reiter-

7. The Court notes that there is no evidence in the record that Plaintiff's replacement, Rene Kitzen, was "outside of plaintiff's particular protected class." *Lubetsky,* 296 F.3d at 1305; *see also Wilshin v. Allstate Ins. Co.*, 212 F.Supp.2d 1360, 1371 (M.D.Ga.2002); *Klein v. Derwinski,* 869 F.Supp. 4, 8 (D.D.C.1994); *Greenfield v. City of Miami Beach,* 844 F.Supp. 1519, 1526 (S.D.Fla.1992), *aff'd,* 20

F.3d 1174 (11th Cir.1994), *cert. denied,* 513 U.S. 868, 115 S.Ct. 187, 130 L.Ed.2d 121 (1994). While there is evidence in the record that Mr. Kitzen is Dutch, the religion of Mr. Kitzen, if any, is unknown. Wiesinger Dep. at 73. There also is evidence that Lauda Air does not inquire into the religion of its prospective and current employees. Wiesinger Dep. at 99.

ate that evidence here. Therefore, the Court finds that Plaintiff has failed to make out a *prima facie* case based upon circumstantial evidence of discrimination. Accordingly, because the Court finds that Plaintiff has failed to make out a *prima facie* case based upon either direct or circumstantial evidence of discrimination, summary judgment is GRANTED in favor of Lauda Air as to Count II of the Complaint.

## C. BREACH OF CONTRACT

Finally, the Court must address the fate of Plaintiff's breach of contract claim averred in Count III of the Complaint. Because the Court finds to a legal certainty that this claim is for less than the requisite monetary threshold for diversity jurisdiction, the Court does not have independent subject matter jurisdiction over this claim and exercises its discretion to decline supplemental jurisdiction. In doing so, the Court merely addresses this claim insofar as it impacts its qualification for federal diversity jurisdiction and therefore does not prejudge whether Plaintiff is entitled to recover any damages pursuant to the alleged contract.

### 1. Diversity Jurisdiction

The only possible independent basis for federal subject matter jurisdiction over Count III of the Complaint is diversity of citizenship. Plaintiff alleges that he is "a citizen and resident of Pinellas County [Florida]." Cmplt. ¶ 6. Plaintiff also alleges that Lauda Air is "a foreign corporation authorized and doing business in [Florida]." *Id.* ¶ 7. While Plaintiff does not allege Lauda Air's principal place of business, there is sufficient evidence in the record indicating that Lauda Air's principal place of business was in Austria. *See*

Fitz Decl. ¶ 2–5. Even assuming that Plaintiff properly and correctly alleged the citizenship of the parties, the Court finds to a legal certainty that any damages recoverable on the alleged contract could never satisfy the monetary threshold required for diversity jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). While Plaintiff seeks more than $75,000 in damages, based upon the unambiguous four week notice of termination period contained in the letter of intent, the Court finds that it is a legal certainty that Plaintiff is unable to satisfy the monetary minimum. *Odell v. Humble Oil & Ref. Co.*, 201 F.2d 123, 128 (10th Cir.1953), *cert. denied*, 345 U.S. 941, 73 S.Ct. 833, 97 L.Ed. 1367 (1953) (affirming dismissal based upon 30 day notice of termination provision); *see also Pirenne Python Schifferli Peter & Associes v. Wyndham Partners*, No. 92 Civ. 9552(SAS), 1995 WL 261512, *2 (S.D.N.Y. May 3, 1995).

Plaintiff seeks to recover salary and benefits that he would have received from Lauda Air from March 22, 1999, the agreed upon starting date, to the present, as well as assorted expenses such as rent and car payments that he incurred after signing the letter of intent. The parties signed the following letter of intent quoted in pertinent part:

A contract will be made to include the following terms and conditions: The basic starting salary will be $45,000.00 per year paid bi-weekly in arrears. A sum of $2,772.00 per year will additionally be paid quarterly in compensation for non-participation in the company health insurance plan. [Plaintiff] may participate in the company 401K plan. There will be a bonus of up to $15,000.00 per annum payable on achievement of agreed

objectives and which will be payable pro-rata for the remainder of the Lauda Air financial year (to 31 Oct 1999). Paid vacation will be granted for four weeks per calendar year. Personal/sick days will be up to 5 days per year. Expenses incurred on Lauda Air duty (including car mileage at rates agreed from time to time) will be reimbursed following approval. Travel benefits will be granted in accordance with Lauda Air's staff travel policy. The contract of employment will be made subject to *four weeks notice of termination* on either side, and will commence 22 March 1999. Cmplt. Ex. C. (emphasis added).

Plaintiff relies upon this letter of intent, and for purposes of the jurisdictional question only, the Court assumes that it is a valid and enforceable contract.

■■■■ A party cannot receive more that he bargained for under a contract. *See, e.g., Koplowitz v. Girard,* 658 So.2d 1183, 1184 (Fla. 4th DCA 1995); *see also Martin v. U–Haul Co. of Fresno.,* 204 Cal.App.3d 396, 251 Cal.Rptr. 17, 24 (1988) ("Parties who agree that a contract may be terminated for any reason, or no reason, upon the giving of the specified notice could not reasonably anticipate that damages could exceed that notice period."). Furthermore, Florida is a strong at-will employment state. *See, e.g., Hartley v. Ocean Reef Club, Inc.,* 476 So.2d 1327, 1328 (Fla. 3d DCA 1985); *Malver v. Sheffield Indus., Inc.,* 462 So.2d 567, 568 (Fla. 3d DCA 1985); *Rehman v. ECC Int'l Corp.,* No. 90–425–Civ–ORL–22, 1993 WL 85758, *3 (M.D.Fla. Mar.4, 1993). If a plaintiff proves that no reasonable notice was given, he may recover damages for the failure to give notice, but his recovery is limited to salary or wages at the agreed-upon rate for a reasonable period of notice.

*Rehman,* 1993 WL 85758 at *4; *see also Perri v. Byrd,* 436 So.2d 359, 361 (Fla. 1st DCA 1983). In the instant case, the Court finds that the parties agreed that four weeks constituted "reasonable notice." Consistent with this determination, several non-Florida courts have held that the damages recoverable for breach of an employment contract terminable at will upon the giving of notice of a specific length of time are limited to the salary that would have been earned during the notice period. *E.g. Pecarovich v. Becker,* 113 Cal.App.2d 309, 248 P.2d 123, 128–29 (1952); *Bitterman v. Gluck,* 256 A.D. 336, 9 N.Y.S.2d 1007, 1008 (N.Y.App.Div.1939); *Jewell v. Colonial Theater Co.,* 12 Cal.App. 681, 108 P. 527, 527–28 (1910).

■■■■ The Court finds that the letter of intent is unambiguous on its face and that at most Plaintiff would be able to recover his salary and any applicable benefits for the four week notice of termination period. While the Court doubts under any circumstances that Plaintiff would be entitled to a pro-rated share of the discretionary bonus, 401(k) plan, vacation time, sick/personal leave, expense reimbursement and travel benefits, even these amounts in addition to his pro-rata salary and health insurance compensation do not approach the $75,000 monetary threshold required for diversity jurisdiction. Accordingly, because it appears to a legal certainty that Plaintiff cannot under any circumstances reach the requisite monetary threshold, the Court finds that it lacks diversity jurisdiction over Plaintiff's breach of contract claim.

**2. Supplemental Jurisdiction**

■■■■ Because the Court finds that it does not have independent subject matter jurisdiction over Plaintiff's breach of contract claim, the Court must consider

whether it will exercise supplemental jurisdiction over this claim. "The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). If all the federal law claims in an action have been eliminated before trial and only pendent state law claims remain, the court generally should [dismiss] the case, even though it was originally properly [filed] based upon federal question jurisdiction. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349–51, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Levy v. City of Hollywood,* 90 F.Supp.2d 1344, 1347 (S.D.Fla.2000). In such cases, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— point strongly toward declining to exercise jurisdiction over the remaining state law claims. *Carnegie–Mellon Univ.,* 484 U.S. at 350 n. 7, 108 S.Ct. 614; *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the Court declines supplemental jurisdiction of the surviving breach of contract claim in Count III of the Complaint. 28 U.S.C. § 1367(c)(3). Therefore, Count III of the Complaint is DISMISSED *without prejudice.*

## IV. CONCLUSION

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (**D.E. No. 22**), filed on *October 11, 2002,* and Plaintiff's Notice of Filing Plaintiff's Interrogatories and Defendant's Answers and Objections to Interrogatories Pursuant to Court's Order of January 28, 2003 (**D.E. No. 44**), filed on *February 24, 2003.*

THE COURT has considered the Motion, the responses, the notice and the pertinent portions of the record, and being otherwise fully advised in the premises and in open court, it is

**ADJUDGED** that the Motion is GRANTED as to Count I of the Complaint, because the Court finds that Plaintiff has failed to establish that Lauda Air is an "employer" subject to Title VII. It is also

**ADJUDGED** that the Motion is GRANTED as to Count II of the Complaint, because the Court finds that Plaintiff has failed to establish that the relevant decision-makers were aware of Plaintiff's religion or Ms. Loeschl's alleged discriminatory statement at the time they made the relevant employment decisions. It is further

**ADJUDGED** that the Court exercises its discretion to decline supplemental jurisdiction of Count III of the Complaint for common law breach of contract. 28 U.S.C. § 1367(c)(3). Because the Court finds to a legal certainty that any recoverable contract damages do not reach the monetary threshold required for diversity jurisdiction, there is no independent basis for federal jurisdiction. The Court notes that it does not prejudge the amount of damages, if any, that Plaintiff is entitled to recover based upon the letter of intent. Accordingly, Count III of the Complaint for breach of contract is DISMISSED *without prejudice.* Finally, it is

**ADJUDGED** that all pending motions are DENIED as moot with leave to refile if appropriate.